David Fleischer (*pro hac vice*)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, NY 10022
Telephone: (212) 318-6000
davidfleischer@paulhastings.com

Andrew M. Jacobs (AZ Bar. No. 021146)
Sarah Jezairian (AZ Bar. No. 021149)
SNELL & WILMER L.L.P.
One South Church Avenue
Suite 1500
Tucson, Arizona 85701-1630
Telephone: (520) 882-1207
ajacobs@swlaw.com
sjezairian@swlaw.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| STEPHEN KIMBLE, an individual, and ROBERT GRABB, an individual, | CASE NO. CV 08-372-TUC-DCB(GEE) |
| Plaintiffs, | |
| vs. | ANSWER AND COUNTERCLAIMS |
| MARVEL ENTERPRISES, INC., | |
| Defendant. | |

Marvel Entertainment, Inc., formerly known as Marvel Enterprises, Inc. ("Marvel"), by its attorneys, Paul, Hastings, Janofsky & Walker LLP and Snell & Wilmer L.L.P., answering the complaint, alleges as follows:

1. Marvel lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 1.

2. Marvel lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 2.

3. Marvel lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3, except Marvel admits that it is a Delaware corporation.

4. Marvel admits the allegations in paragraph 4.

5. Marvel denies the allegations in paragraph 5, except admits that it and plaintiffs participated in a mediation proceeding in Tucson, Arizona prior to the execution of the Agreement (as defined in paragraph 4 of the complaint).

6. Marvel lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 6.

7. Marvel lacks knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 7. Marvel states that the allegations in the second sentence of paragraph 7 constitute conclusions of law as to which no responsive pleading is required.

## COUNT I
(Breach of Contract)

8. Marvel repeats and realleges its answer to the allegations incorporated in paragraph 8.

9. Marvel denies the allegations in paragraph 9.

10. Marvel denies the allegations in paragraph 10.

11. Marvel denies the allegations in paragraph 11 and respectfully refers the Court to the Agreement for a full statement of its terms.

## COUNT II
(Bad Faith)

12. Marvel repeats and realleges its answer to the allegations incorporated in paragraph 12.

13. Marvel states that the allegations in the first sentence of paragraph 12 constitute conclusions of law as to which no responsive pleading is required.  Marvel denies the allegations in the second sentence of paragraph 13.

14. Marvel denies the allegations in paragraph 14.

15. Marvel denies the allegations in paragraph 15

## COUNT III
(Unjust Enrichment)

16. Marvel repeats and realleges its answer to the allegations incorporated in paragraph 8.

17. Marvel denies the allegations in paragraph 17.

18. Marvel denies the allegations in paragraph 18.

## COUNT IV
(Fraud)

19. Marvel repeats and realleges its answer to the allegations incorporated in paragraph 19.

20. Marvel denies the allegations in paragraph 20.

21. Marvel denies the allegations in paragraph 21.

### FIRST AFFIRMATIVE DEFENSE

The complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Marvel overpaid Kimble by paying "3% of 'net product sales'" on the full purchase price of kits containing extra value items in addition to the foam string shooting Web Blaster that was the subject of the Agreement.

### THIRD AFFIRMATIVE DEFENSE

Marvel overpaid Kimble by paying the "3% of 'net product sales'" on the full purchase price of improved Web Blasters containing multiple features in addition to the foam string shooting Web Blaster that was the subject of the Agreement.

### FOURTH AFFIRMATIVE DEFENSE

Count IV of the complaint fails to plead the circumstances constituting the alleged fraud with particularity.

### FIFTH AFFIRMATIVE DEFENSE

To the extent the Agreement is inconsistent with federal law, it is preempted.

### SIXTH AFFIRMATIVE DEFENSE

Marvel has paid plaintiffs all money it is owed pursuant to the Agreement.

### COUNTERCLAIMS

Marvel Entertainment, Inc. ("Marvel"), by its attorneys, Paul, Hastings, Janofsky & Walker LLP and Snell & Wilmer L.L.P., for its counterclaims against plaintiffs, alleges as follows:

22. Marvel is a Delaware corporation which maintains its principal place of business at 417 Fifth Avenue, New York, NY 10016.

23. Upon information and belief, plaintiff Stephen Kimble resides in Arizona.

24. Upon information and belief, plaintiff Robert Grabb resides in Arizona.

-4-

25. The matter in controversy exceeds the sum of $75,000 exclusive of interest and costs.

26. This Court has jurisdiction over the subject matter of these counterclaims pursuant to 28 U.S.C. §§ 1332(a) and 1367(a).

27. In a prior action between the parties, *Stephen E. Kimble v. Toy Biz, Inc.*, C.A. No. CV-97-557-TUC-RCC, in the United States District Court for the District of Arizona ("District Court"), plaintiffs sued Marvel (then known as Toy Biz, Inc.) for infringement of U.S. Patent No. 5,072,856 (the "'856 patent") and for breach of an alleged oral agreement between the parties made at a meeting in 1990 after the patent application was filed, but prior to issuance of the '856 patent.

28. According to the complaint in the prior action, the only product which was the subject of the prior action was "Spider-Man Web Blaster, Item 47630." The Spider-Man Web Blaster, Item 47630 is a toy that straps to the wrist of the user and allows the user to shoot foam string from his or her wrist to emulate Spider-Man. The Spider-Man Web Blaster, Item 47630 shoots foam string and nothing else.

29. In the prior action, the District Court determined that Marvel did not infringe the '856 patent and a jury determined that Marvel had breached an alleged oral agreement with plaintiffs and, as a result, the District Court entered a judgment (the "Judgment") on October 10, 2000 awarding plaintiffs "3.5% of net product sales, past, present and future excluding refill royalties."

30. Plaintiffs appealed the District Court's holding of non-infringement with respect to their patent claim, and Marvel appealed the judgment with respect to the breach of contract claim.

31. While both appeals were pending, and before the Judgment became final, the parties settled their disputes (including the non-final patent dispute and the non-final oral agreement dispute) pursuant to an agreement dated September 21, 2001 (the "Agreement"). The essential terms of the Agreement provided that plaintiffs assigned to Marvel the '856 patent in exchange for $516,214.62 and

> 3% of "net product sales" (as such term is used in the Judgment) excluding refill royalties made after December 31, 2000. For purposes of this paragraph 3.b, "net product sales" shall be deemed to include product sales that would infringe the Patent but for the purchase and sale thereof pursuant to this Agreement as well as sales of the Web Blaster product that was the subject of the Action and to which the Judgment refers.

32. The Agreement did not specify a date on which Marvel's obligation to pay plaintiffs "3% of 'net product sales'" would end.

33. The Agreement further provides that it "contains the entire agreement among the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous arrangement or understandings with respect thereto." The Agreement encompasses the subject matter, if any, of the alleged oral agreement between Marvel and plaintiffs.

34. The '856 patent expires no later than May 25, 2010.

35. Plaintiffs have advised Marvel that they believe Marvel is obligated to continue to make payments under the Agreement after the '856 patent expires and Marvel has notified plaintiffs that it will not continue making payments to plaintiffs under the Agreement after the '856 patent expires.

36. In a February 7, 2008 e-mail, plaintiffs maintained that they are entitled to receive payments "for as long as there is a Web Blaster toy, and assuming there will be such a toy on the market for many many years to come."

37. In 2007 Marvel discontinued selling Web Blaster products.

38. As of January 1, 2007, Marvel has licensed certain trademark and service mark rights relating to certain characters, including Spider-Man, to Hasbro, Inc.("Hasbro"). Pursuant to this license, Hasbro manufactures and markets certain toys (including current Web Blaster products) under the Spider-Man brand.

39. Marvel receives a percentage of the wholesale price for each Spider-Man branded item manufactured and sold by Hasbro.

40. The Spider-Man branded toys sold by Hasbro include current versions of the original Spider-Man Web Blaster (the "basic Web Blaster"), improved versions of the Spider-Man Web Blaster (the "improved Web Blaster"), and kits containing combinations of Web Blaster products and other Spider-Man related toys ("kits").

41. Improved versions of the Web Blaster include (1) a version that shoots foam string and water; (2) a version that has the ability to shoot foam string, water, suction-tipped darts, toy missiles, and plastic stretchy webs; and (3) an electronic version that contains a motor to spin the foam string as it shoots from the Web Blaster and electronically produces sounds emulating the shooting of a web.  Kits include items such as a basic Web Blaster and a Spider-Man mask and/or extra cans of foam string (in addition to the one can included with every Web Blaster).

42. Marvel does not choose the packaging configuration Hasbro uses to market and sell the basic Web Blaster, the improved Web Blaster or the kits.

43. Marvel contends that the "3% of 'net product sales'" paid pursuant to the Agreement should be calculated based on only the value of a non-electronic foam string shooting Web Blaster (*i.e.*, a role play toy whose primary play value is to allow the user to pretend to adopt aspects of the Spider-Man character by shooting foam string) to a given toy or package

configuration, and the value of enhanced features on a Web Blaster or other items packaged with a Web Blaster should not be included in the base on which Marvel pays "3% of 'net product sales'."

44. There is an actual, present and justiciable controversy between Marvel and plaintiffs concerning whether Marvel is required to continue paying "3% of 'net product sales'" pursuant to the Agreement after the expiration of the '856 patent.

45. There is an actual, present and justiciable controversy between Marvel and plaintiffs concerning the base on which to calculate the amounts owed to plaintiffs based on Hasbro's sales of Spider-Man brand toys which include some form of Web Blaster.

FIRST COUNTERCLAIM
(Declaratory Judgment of Marvel's Obligations under the Agreement)

46. Marvel repeats and realleges the allegations set forth above in paragraphs 22 through 45.

47. There is an actual, present and justiciable controversy between Marvel and plaintiffs as to Marvel's obligations under the Agreement.

48. Marvel's desires a judicial determination of its rights and duties, and a declaration that it is no longer required to pay plaintiffs "3% of 'net product sales'" under the Agreement based on sales of products after the expiration of the '856 patent.

49. Marvel has been forced to retain legal counsel to prosecute its claims in this action and is entitled to reasonable attorney fees and costs of suit incurred herein pursuant to the Agreement.

50. This action arises under a contract. Accordingly, and given its facts, this Court should award Marvel its reasonable attorney fees under A.R.S. 12-341.01(A).

SECOND COUNTERCLAIM
(Unjust Enrichment for "Extra Value Items")

51. Marvel repeats and realleges the allegations set forth above in paragraphs 22 through 50.

52. By mistake, in calendar year 2007 Marvel paid plaintiffs "3% of 'net product sales'" on the total price of products consisting of kits containing a basic Web Blaster as well as additional Spider-Man related toys ("Extra Value Items") such as a Spider-Man mask.

53. Marvel believes that for kits containing extra value items, it should only be required to pay plaintiffs "3% of 'net product sales'" on the percentage of the total price of the kits attributable to the basic Web Blaster plus one can of refill string as contemplated by the Agreement.

54. As a result of Marvel's mistaken failure to allocate between the basic Web Blaster and extra value items the amounts payable to plaintiffs under the Agreement in respect of calendar year 2007 "net product sales," plaintiffs have been over paid and unjustly enriched.

55. Marvel has been forced to retain legal counsel to prosecute its claims in this action and is entitled to reasonable attorney fees and costs of suit incurred herein pursuant to the Agreement.

56. This action arises under a contract. Accordingly, and given its facts, this Court should award Marvel its reasonable attorney fees under A.R.S. 12-341.01(A).

THIRD COUNTERCLAIM
(Unjust Enrichment for "Improved Web Blasters")

57. Marvel repeats and realleges the allegations set forth above in paragraphs 26 through 56.

58. By mistake, in calendar year 2007 Marvel paid plaintiffs "3% of 'net product sales'" on the total price of products consisting of improved Web Blasters which perform

-9-

various additional functions in addition to that of the basic Web Blaster, *i.e.*, a role play toy whose primary play value is to allow the user to pretend to adopt aspects of the Spider-Man character by shooting foam string.

59. Marvel believes that for these improved Web Blaster products, it should only be required to pay plaintiffs "3% of 'net product sales'" on the percentage of the total price of the product attributable to the function of the basic Web Blaster, *i.e.*, a role play toy whose primary play value is to allow the user to pretend to adopt aspects of the Spider-Man character by shooting foam string.

60. As a result of Marvel's mistaken failure to exclude the price of extra functions of the improved Web Blaster products in respect of calendar year 2007 "net product sales," plaintiffs have been over paid and unjustly enriched.

61. Marvel has been forced to retain legal counsel to prosecute its claims in this action and is entitled to reasonable attorney fees and costs of suit incurred herein pursuant to the Agreement.

62. This action arises under a contract. Accordingly, and given its facts, this Court should award Marvel its reasonable attorney fees under A.R.S. 12-341.01(A).

WHEREFORE, Marvel respectfully demands judgment against plaintiffs as follows:

    a. dismissing the complaint and on each count thereof awarding Marvel its reasonable attorney fees under A.R.S. 12-341.01(A).;

    b. on the first counterclaim, declaring that Marvel is not required to pay plaintiffs "3% of 'net product sales'" under the Agreement based on sales of products after the expiration of the '856 patent;

    c. on the second counterclaim, awarding Marvel damages against plaintiffs for unjust enrichment in an amount determined at trial based on the percentage of the total price of the kits attributable to extra value items included in "net product sales" of kits containing the Web Blaster toy;

    d. on the third counterclaim, awarding Marvel damages against plaintiffs for unjust enrichment in an amount determined at trial based on the percentage of the total price of improved Web Blaster products allocable to functions other than the basic Web Blaster included in "net product sales" of improved Web Blaster toys;

    e. on all claims, awarding Marvel reasonable attorneys as the prevailing party in accordance with the Agreement;

    f. on all counterclaims, awarding Marvel its reasonable attorney fees under A.R.S. 12-341.01(A).

    g. on all claims, awarding Marvel the costs and disbursements of this action; and

h. granting such other and further relief as to the Court may seem just and proper.

Dated: August 4, 2008

                              PAUL, HASTINGS, JANOFSKY & WALKER LLP

                              By: s/David Fleischer_____
                                  David Fleischer
                              75 East 55th Street
                              New York, NY 10022
                              Telephone: (212) 318-6000
                              davidfleischer@paulhastings.com

                              SNELL & WILMER L.L.P,
                              Andrew Jacobs
                              Sarah Jezairian
                              One South Church Avenue
                              Suite 1500
                              Tucson, Arizona  85701-1630

                              Attorneys for Defendant