Steven Kimble (AZ Bar No. 009159)
Robert Grabb (AZ Bar No. 009464)
KimbleGrabb, P.L.L.C.
7411 E. Tanque Verde Rd.
Tucson, AZ 85715
Telephone: (520) 326-2500
Kimblelaw@aol.com

Attorneys and Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STEPHEN KIMBLE, an individual, and ROBERT GRABB, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>MARVEL ENTERTAINMENT , INC.,<br><br>Defendant. | Case No. CIV 08-372-TUC-DCB (GEE)<br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**(Breach of Contract; Bad Faith; Unjust Enrichment; Fraud)** |

Plaintiffs for their Complaint, allege as follows:

**GENERAL ALLEGATIONS**

1. Plaintiff Stephen Kimble resides in Pima County, Arizona.

2. Plaintiff Robert Grabb resides in Pima County, Arizona.

3. Defendant Marvel Entertainment Inc. ("Marvel"), formerly known as

Marvel Enterprises, Inc., is a Delaware corporation, which at all relevant times did business in, and caused events to occur, in Pima County, Arizona.

4.  On or about September 21, 2001, Defendant Marvel entered into a contract (the "Agreement") with Plaintiffs Kimble and Grabb (collectively referred to as plaintiffs "Kimble").

5.  Prior to the execution of the Agreement, the parties met in Pima County, Arizona to negotiate the terms thereof.

6.  Plaintiffs Kimble conducted all of their negotiations regarding the Agreement from Pima County, Arizona.

7. Plaintiffs Kimble executed the Agreement in Pima County, Arizona. The State of Arizona therefore, has jurisdiction and venue in Pima County is proper for this action.

### Count I
### (Breach of Contact)

8. Plaintiffs re-allege and incorporate each and every allegation contained in paragraphs 1 through 7 as if set forth in full below.

9. The Agreement obligates Defendant Marvel to pay:

> 3% of "net product sales" (as such term is used in the Judgment) excluding refill royalties made after December 31, 2000.  For purposes of this paragraph 3.b, "net product sales" shall be deemed to include product

>sales that would infringe the Patent but for the purchase and sale thereof pursuant to this Agreement as well as sales of the Web Blaster product that was the subject of the Action and to which the Judgment refers.

10, The parties agreed that "net product sales" was defined as 93% of gross product sales.

11. Defendant Marvel has breached the Agreement in several ways.

12. Plaintiffs exercised their right to audit Defendant Marvel, and the audit found that Defendant Marvel had underpaid Plaintiffs $153,000.00 for 2007 royalties.

13. In 2007 and 2008, Defendant Marvel calculated "net product sales" by using a percentage of gross product sales that was less than 93%, thus lowering and withholding royalties owed to Plaintiffs in the amount of at least $85,810.00 for 2007 royalties in addition to the $153,000.00 mentioned above.

14. Defendant Marvel breached the Agreement by unilaterally deducting from product sales items and/or functions from the products that were ultimately marketed and sold.

15. Defendant Marvel has breached the Agreement by refusing to pay royalties that pursuant to the Agreement it owes to Plaintiffs Kimble.

16. Plaintiffs Kimble have been economically damaged as a result of

Defendant's breach

17. The Agreement specifies that in case of a dispute the prevailing party is entitled to reasonable attorney fees.

## Count II
## (Bad Faith)

18. Plaintiffs re-allege and incorporate each and every allegation contained in paragraphs 1 through 17 as if set forth in full below.

19. Implied in every contract is an obligation of Good Faith and Fair Dealing. Defendant Marvel has systematically, intentionally and with an evil mind breached that obligation by withholding moneys owed to Plaintiffs Kimble.

20 Among other things, Defendant has failed to report earnings, unilaterally reduced payments and retaliated for an audit that Plaintiffs caused to be performed that showed that Defendant Marvel owed Plaintiffs Kimble money.

21. Defendants conduct was done with an evil mind and as such, Plaintiffs Kimble are entitled to punitive damages.

## Count III
## (Fraud)

22. Plaintiffs re-allege and incorporate each and every allegation contained in paragraphs 1 through 21 as if set forth in full below.

23. Pursuant to the Agreement, Defendant Marvel is to provide quarterly statements that correspond to the quarterly payment being made.24.

Plaintiffs discovered that in the third quarter of 2007, Marvel failed to pay any royalties on a version of the toy, marketed as the "Ultimate Web Blaster". On December 13, 2007, Plaintiff Robert Grabb inquired via email about the royalties for the Ultimate Web Blaster. On December 20, 2007, Ken West, executive vice president and CFO of Defendant Marvel informed Plaintiffs via email that a check for those royalties would be issued the next day.

25. When Defendant Marvel finally issued its additional payment, it unilaterally reduced the moneys owed by 80%. After several emails and discussions, Marvel acknowledged that it did not have the right to reduce the payments and made full payment for the royalty. No payment was made for the loss of use of the money.

26. On January 7, 2008, Plaintiff Robert Grabb, via email, expressed disappointment at the amount of the royalties for the Ultimate Web Blaster, and asked Ken West for assurances that Marvel owed no further monies to Plaintiffs.

27. The next day, Ken West responded to the email, but ignored the request to provide an assurance that Marvel did not owe Plaintiffs any other royalties.

28. That same day, January 8, 2008, Plaintiff Robert Grabb sent Ken West another email asking him for an assurance that no other royalties were

owed to Plaintiffs. On January 9, 2008, Ken West responded by email and "confirmed" that "all applicable toy sales have been reported."

29. Later on that same day, Plaintiff Robert Grabb inquired about 3rd Quarter royalties for 2007 on 2 other versions of the toy; the "Spiderman 3 Venom Mask & Wrist Blaster", and the "Spiderman 3 Reversible Red to Black Spider-Man Mask and Web Blaster". Ken West, via email on that same day, acknowledged that it had once again failed to pay royalties on these items and claimed that its failure to pay was "inadvertent".

30. In the fourth quarter of 2007, Plaintiffs exercised their right to audit Marvel. In response, Marvel unilaterally imposed even greater cuts in the Plaintiffs' royalty payments. Marvel then imposed those cuts retroactively claiming that in the last twelve (12) months, it had made overpayments to Plaintiffs in the amount of $216,010.00 and began deducting that money from future payments.

31. Upon information and belief, Defendant Marvel knowingly provided inaccurate quarterly statements, and underpaid Plaintiffs royalties it owed for sales prior to 2007.

32. Defendant Marvel in so doing, made false and material representations knowing them to be false, or was ignorant of their truth, with the intention that Plaintiffs Kimble would accept the amounts Defendant Marvel claimed it owed to Plaintiffs Kimble,

33. Plaintiffs Kimble were unaware of the representations falsity and rightfully and justifiably relied on the truth of the representations, and sustained consequent and proximate damage.

## Count IV
### (Unjust Enrichment)

34. Plaintiffs re-allege and incorporate each and every allegation contained in paragraphs 1 through 33 as if set forth in full below.

35. Upon information and belief, Defendant Marvel, prior to 2007, enriched itself and impoverished Plaintiffs Kimble by unjustifiably withholding payments owed to Plaintiffs Kimble.

36. Pursuant to the Agreement, Plaintiffs bestowed upon Defendant Marvel, among other things, the right to market and sell certain products.

37. By unjustly withholding royalties payments owed for those periods prior to 2007, Defendant Marvel will have obtained said benefit without having adequately compensated Plaintiffs.

38. The Agreement may prevent Plaintiffs Kimble from disputing past royalties and such a clause would prevent Plaintiffs Kimble from an adequate remedy at law.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

    a. For actual, incidental and consequential damages in an amount to be determined at trial.

    b. For prejudgment interest on the liquidated damages.

c. For their reasonable costs.

d. For their reasonable attorney fees.

e. For punitive damages in an amount sufficient to both punish these Defendants and to serve as an example for others.

f. For such other and further relief which the Court deems just and proper.

**KimbleGrabb, PLLC**

by   s/Robert Grabb
Robert Grabb, Esq.
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2008, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing.

I further certify that on November 14, 2008, I served the attached document be email to:

Andrew Jacobs
Snell & Willmer, LLP
ajacobs@swlaw.com


David Fleischer
Paul, Hastings, Hanofsky & Walker LLP
davidfleischer@paulhastings.com


s/Robert Grabb

Steven Kimble (AZ Bar No. 009159)
Robert Grabb (AZ Bar No. 009464)
KimbleGrabb, P.L.L.C.
7411 E. Tanque Verde Rd.
Tucson, AZ 85715
Telephone: (520) 326-2500
Kimblelaw@aol.com

Attorneys and Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STEPHEN KIMBLE, an individual, and ROBERT GRABB, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>MARVEL ENTERTAINMENT, INC.,<br><br>Defendant. | Case No. CIV 08-372-TUC-DCB (GEE)<br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**(Breach of Contract; Bad Faith; Unjust Enrichment; Fraud)** |

Plaintiffs for their Complaint, allege as follows:

**GENERAL ALLEGATIONS**

1. Plaintiff Stephen Kimble resides in Pima County, Arizona.

2. Plaintiff Robert Grabb resides in Pima County, Arizona.

- 1 -

- Deleted: ¶
- Formatted: Font: 13 pt
- Deleted: KimbleGrabb, P.L.L.C.¶ Stephen Kimble Esq. #009159; #31072¶ Robert Grabb Esq. #009464; #21516¶ 7411 E. Tanque Verde Rd.¶ Tucson, Arizona 85715¶ Ph: 520.326.2500¶
- Deleted: IN THE SUPERIOR COURT OF THE STATE OF ARIZONA¶ IN AND FOR THE COUNTY OF PIMA¶
- Deleted: ENTERPRISES
- Formatted Table

3. Defendant Marvel Entertainment, Inc. ("Marvel"), formerly known as Marvel Enterprises, Inc., is a Delaware corporation, which at all relevant times did business in, and caused events to occur, in Pima County, Arizona.

Deleted: Enterprises,
Deleted:

4. On or about September 21, 2001, Defendant Marvel entered into a contract (the "Agreement") with Plaintiffs Kimble and Grabb (collectively referred to as plaintiffs "Kimble").

5. Prior to the execution of the Agreement, the parties met in Pima County, Arizona to negotiate the terms thereof.

6. Plaintiffs Kimble conducted all of their negotiations regarding the Agreement from Pima County, Arizona.

7. Plaintiffs Kimble executed the Agreement in Pima County, Arizona. The State of Arizona therefore, has jurisdiction and venue in Pima County is proper for this action.

**Count I**
**(Breach of Contact)**

8. Plaintiffs re-allege and incorporate each and every allegation contained in paragraphs 1 through 7 as if set forth in full below.

9. The Agreement obligates Defendant Marvel to pay:

    3% of "net product sales" (as such term is used in the Judgment) excluding refill royalties made after December 31, 2000. For purposes of this paragraph 3.b,

- 2 -

"net product sales" shall be deemed to include product sales that would infringe the Patent but for the purchase and sale thereof pursuant to this Agreement as well as sales of the Web Blaster product that was the subject of the Action and to which the Judgment refers.

10. The parties agreed that "net product sales" was defined as 93% of gross product sales.

11. Defendant Marvel has breached the Agreement in several ways.

12. Plaintiffs exercised their right to audit Defendant Marvel, and the audit found that Defendant Marvel had underpaid Plaintiffs $153,000.00 for 2007 royalties.

13. In 2007 and 2008, Defendant Marvel calculated "net product sales" by using a percentage of gross product sales that was less than 93%, thus lowering and withholding royalties owed to Plaintiffs in the amount of at least $85,810.00 for 2007 royalties in addition to the $153,000.00 mentioned above.

14. Defendant Marvel breached the Agreement by unilaterally deducting from product sales items and/or functions from the products that were ultimately marketed and sold.

15 Defendant Marvel has breached the Agreement by refusing to pay royalties that pursuant to the Agreement it owes to Plaintiffs Kimble.

- 3 -

16. Plaintiffs Kimble have been economically damaged as a result of Defendant's breach.

17. The Agreement specifies that in case of a dispute the prevailing party is entitled to reasonable attorney fees.

## Count II
### (Bad Faith)

18. Plaintiffs re-allege and incorporate each and every allegation contained in paragraphs 1 through 17 as if set forth in full below.

19. Implied in every contract is an obligation of Good Faith and Fair Dealing. Defendant Marvel has systematically, intentionally and with an evil mind breached that obligation by withholding moneys owed to Plaintiffs Kimble.

20. Among other things, Defendant has failed to report earnings, unilaterally reduced payments and retaliated for an audit that Plaintiffs caused to be performed that showed that Defendant Marvel owed Plaintiffs Kimble money.

21. Defendants conduct was done with an evil mind and as such, Plaintiffs Kimble are entitled to punitive damages.

## Count III
### (Fraud)

22. Plaintiffs re-allege and incorporate each and every allegation contained in paragraphs 1 through 21 as if set forth in full below.

23. Pursuant to the Agreement, Defendant Marvel is to provide quarterly

- 4 -

statements that correspond to the quarterly payment being made.24. Plaintiffs discovered that in the third quarter of 2007, Marvel failed to pay any royalties on a version of the toy, marketed as the "Ultimate Web Blaster". On December 13, 2007, Plaintiff Robert Grabb inquired via email about the royalties for the Ultimate Web Blaster. On December 20, 2007, Ken West, executive vice president and CFO of Defendant Marvel informed Plaintiffs via email that a check for those royalties would be issued the next day.

25. When Defendant Marvel finally issued its additional payment, it unilaterally reduced the moneys owed by 80%. After several emails and discussions, Marvel acknowledged that it did not have the right to reduce the payments and made full payment for the royalty. No payment was made for the loss of use of the money.

26. On January 7, 2008, Plaintiff Robert Grabb, via email, expressed disappointment at the amount of the royalties for the Ultimate Web Blaster, and asked Ken West for assurances that Marvel owed no further monies to Plaintiffs.

27. The next day, Ken West responded to the email, but ignored the request to provide an assurance that Marvel did not owe Plaintiffs any other royalties.

28. That same day, January 8, 2008, Plaintiff Robert Grabb sent Ken West

- 5 -

another email asking him for an assurance that no other royalties were owed to Plaintiffs.  On January 9, 2008, Ken West responded by email and "confirmed" that "all applicable toy sales have been reported."

29. Later on that same day, Plaintiff Robert Grabb inquired about 3rd Quarter royalties for 2007 on 2 other versions of the toy; the "Spiderman 3 Venom Mask & Wrist Blaster", and the "Spiderman 3 Reversible Red to Black Spider-Man Mask and Web Blaster".  Ken West, via email on that same day, acknowledged that it had once again failed to pay royalties on these items and claimed that its failure to pay was "inadvertent".

30.  In the fourth quarter of 2007, Plaintiffs exercised their right to audit Marvel.  In response, Marvel unilaterally imposed even greater cuts in the Plaintiffs' royalty payments.  Marvel then imposed those cuts retroactively claiming that in the last twelve (12) months, it had made overpayments to Plaintiffs in the amount of $216,010.00 and began deducting that money from future payments.

31. Upon information and belief, Defendant Marvel knowingly provided inaccurate quarterly statements, and underpaid Plaintiffs royalties it owed for sales prior to 2007.

32.  Defendant Marvel in so doing, made false and material representations knowing them to be false, or was ignorant of their truth, with the intention that Plaintiffs Kimble would accept the amounts Defendant Marvel claimed

**Deleted:** 20.

- 6 -

it owed to Plaintiffs Kimble,

33. Plaintiffs Kimble were unaware of the representations falsity and rightfully and justifiably relied on the truth of the representations, and sustained consequent and proximate damage.

## Count IV
## (Unjust Enrichment)

34. Plaintiffs re-allege and incorporate each and every allegation contained in paragraphs 1 through 33 as if set forth in full below.

35. Upon information and belief, Defendant Marvel, prior to 2007, enriched itself and impoverished Plaintiffs Kimble by unjustifiably withholding payments owed to Plaintiffs Kimble.

36. Pursuant to the Agreement, Plaintiffs bestowed upon Defendant Marvel, among other things, the right to market and sell certain products.

37. By unjustly withholding royalties payments owed for those periods prior to 2007, Defendant Marvel will have obtained said benefit without having adequately compensated Plaintiffs.

38. The Agreement may prevent Plaintiffs Kimble from disputing past royalties and such a clause would prevent Plaintiffs Kimble from an adequate remedy at law.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

    a. For actual, incidental and consequential damages in an amount to be determined at trial.

- 7 -

1  b. For prejudgment interest on the liquidated damages.

2  c. For their reasonable costs.

3  d. For their reasonable attorney fees.

4
5  e. For punitive damages in an amount sufficient to both punish these Defendants and to serve as an example for others.

6
7  f. For such other and further relief which the Court deems just and proper.

8

9

10  **KimbleGrabb, PLLC**

11

12

13  by   s/Robert Grabb
     Robert Grabb, Esq.
14   Attorneys for Plaintiffs

15

16  **CERTIFICATE OF SERVICE**

17       I hereby certify that on November 14, 2008, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing.
18

19       I further certify that on November 14, 2008, I served the attached document be email to:
20

21  Andrew Jacobs
    Snell & Willmer, LLP
22  ajacobs@swlaw.com

23

24  David Fleischer
    Paul, Hastings, Hanofsky & Walker LLP
25  davidfleischer@paulhastings.com

Formatted

Deleted: by

Stephen Kimble Esq.¶
Attorneys for Plaintiffs¶

Formatted: Font: 13 pt

- 8 -

s/Robert Grabb

*Formatted: Font: 13 pt*

- 9 -