**KimbleGrabb, P.L.L.C.**
7411 E. Tanque Verde Rd.
Tucson, Arizona  85715
Ph: 520.326.2500
KimbleLaw@aol.com

Attorneys and Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STEPHEN KIMBLE, an individual, and ROBERT GRABB, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>MARVEL ENTERPRISES, INC.,<br><br>Defendant. | Case No. CIV 08-372-TUC-DCB (DTF)<br><br>**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIMANT'S SECOND AMENDED COUNTERCLAIM**<br><br>(Oral Argument Requested) |

Plaintiffs move, pursuant to rule 56 of the Federal Rules of Civil Procedure, for Summary Judgment on the Counterclaimant's Second Amended Counterclaim.  This *Motion* is supported by the attached *Memorandum of Points and Authorities* together with the accompanying *Statement of Facts*.

### Memorandum Of Points And Authorities

### Background

Though a serial recitation of facts is provided in the Statement of Facts that accompanies this *Motion*, for the Court's convenience, a narrative follows.  Plaintiff

Kimble is the inventor of an idea for a foam string web shooting toy described in US Patent No. 5,072,856 (Kimble Patent). In 1990, while the patent application was pending, Kimble met with Lou Schwartz, President of Toy Biz Inc, (now known as Marvel Entertainment, Inc., hereinafter "Marvel") to discuss his idea. In that meeting, Schwartz advised Kimble that if Kimble disclosed the idea and if Toy Biz Inc. liked the idea, it would first negotiate a reasonable royalty payment prior to using it. Kimble disclosed his idea, and Toy Biz subsequently made and sold the toy without first having negotiated a reasonable royalty with Kimble but refused to pay Kimble any royalty.

In 1996 Toy Biz began selling the Web Blaster, a foam string web shooting toy. In 1997, Kimble filed suit against Toy Biz in the United Stated District Court for the District of Arizona claiming that by selling the Web Blaster, Toy Biz had infringed the Kimble Patent and had breached the agreement to negotiate a reasonable royalty (the Verbal Agreement). Marvel moved for Summary Judgment on the claims. The District Court ruled that Toy Biz had not infringed the Kimble Patent and that the existence and substance of the Verbal Agreement was a jury question.

In October, 2000, the issue of the Verbal Agreement was tried to a jury that returned a verdict in favor of Plaintiff and awarded royalties of 3.5% of net product sales, excluding refills. Both parties appealed the judgment, and, while the appeal was pending, the matter was settled. On September 21, 2001, the parties entered into a settlement agreement (Settlement Agreement) that ended the litigation. **The Settlement Agreement is attached as Exhibit 1 and incorporated by this reference.** As part of the settlement, the Plaintiffs assigned to Marvel the Kimble

Patent. In exchange, Marvel agreed to make a lump sum payment to Plaintiffs and further pay 3% of net product sales made after December 31, 2000. (Exhibit 1, paragraph 3b)

From 2001 through 2007, Marvel manufactured various versions of the Web Blaster and issued Plaintiffs the appropriate royalty payments based on "net product sales". In 2006 Marvel entered into a license agreement with Hasbro, a toy manufacturer, whereby Hasbro would manufacture and sell Marvel's toys, including the Web Blaster. In exchange, Marvel would receive from Hasbro a percentage of the net product sales with a guaranteed minimum payment.

In 2007, pursuant to the license agreement, Hasbro began manufacturing and selling the Web Blaster. Through 2007 Hasbro reported net product sales to Marvel and Marvel in turn paid Plaintiffs what it purported to be 3% of Hasbro's net product sales.

On May 28, 2008, Plaintiffs filed suit against Marvel on an unrelated claim, and on November 14, 2008, Plaintiffs filed their *First Amended Complaint*. On January 26, 2009, Marvel filed its *Answer to First Amended Complaint and Amended Counterclaim,* and in count two of that *Amended Counterclaim* alleged for the first time that:

> 49. By mistake, in respect of calendar year 2007, Marvel has paid plaintiffs based on Hasbro's net product sales rather than its own net product sales as contemplated and required by the Agreement.
>
> 50. As a result of Marvel's mistake, plaintiffs have been over paid and unjustly enriched.

In this *Motion for Summary Judgment,* Plaintiffs request this Court deny this

- 3 -

claim and that it award Plaintiffs' reasonable attorney's fees.

## Legal Analysis

Paragraph 3 of the Settlement Agreement provides as follows:

> Marvel agrees to purchase from the Patent Holders and the Patent Holders agree to sell to Marvel the Patent which will be evidenced by an instrument of assignment in the form of exhibit C hereto. The purchase price for the Patent shall be payable to the Patent Holders as follows:
>
> . . .
>
> b.  3% of **"net product sales"** (as such term is used in the Judgment) excluding refill royalties made after December 31, 2000.  (emphasis added)

The Settlement Agreement clearly requires Marvel to pay Plaintiffs' "3% of net product sales".  After Hasbro licensed the rights to produce the Web Blaster, Marvel continued to pay Plaintiffs 3% of Hasbro's net product sales.

Contrary to the Settlement Agreement's obvious intent and clear language, Marvel now argues that it should not be obligated to pay 3% of Hasbro's net product sales, but instead, 3% of Marvel's profit on those sales.

The Settlement Agreement further provides that:

> Within 45 days after the calendar quarter ending September 30, 2001 and within 45 days after the end of each calendar quarter thereafter in which product sales are made Marvel will (i) submit to Kimble (on behalf of the Patent Holders) a report (the "Quarterly Royalty Report") covering **net product sales** made during such quarter which shall include the **number of units** of products sold, the price(s) at which such products were sold and a **calculation of net product sales** made during such quarter and (ii) remit payment to the Patent Holders of the amount shown as due in such Quarterly Royalty Report . (paragraph 4, emphasis added)

The Settlement Agreement clearly and explicitly provides that on a quarterly

basis Marvel is to report the number of units sold, the price per unit, its calculation of net product sales, and then issue payment based on those net product sales.  The quoted language has no meaning other than in the context of a payment based solely on a percentage of the price and number of units sold.

Marvel's claim has no merit in view of the clear language of the Settlement Agreement.  Where, as here, an agreement "is complete, clear and unambiguous on its face [, it] must be enforced according to the plain meaning of its terms. . ." *Greenfield v. Philles Records, Inc.*, 98 NY2d 562, 569 (2002).  The plain meaning of the terms of the agreement requires Marvel to pay plaintiffs 3% of net product sales not 3% of its profit.

Finally, Paragraph 11 of the Settlement Agreement  provides:

> This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, administrators, executors, successors and assigns.

It is well settled that an assignor of intellectual property rights in a contract remains bound by its obligations therein.  *Rosenthal P. Co. v. Nat. Folding B. & P. Co.,* 226 N.Y. 313, 123 N.E. 766  (1919).  A subsequent assignment of intellectual property rights to another does not destroy the privity of contract between the assignor and the party to whom it was obligated under a pre-existing agreement. In the present case, Marvel's license to Hasbro of all or some of the rights it acquired under the Settlement Agreement did not extinguish its privity of contract with Plaintiffs, nor its obligations to perform there-under.  However, without any regard for this basic principle of law, or for the language of the Settlement Agreement, Marvel now asserts that its license to Hasbro relieves both Marvel and Hasbro from the royalty obligations

expressed in plain language in the Settlement Agreement. It is respectfully submitted that this position is patently wrong.

## CONCLUSION

The language of the Settlement Agreement is clear and unambiguous. Plaintiffs are to receive 3% of net product sales. Marvel's licensing of some of its rights under the Settlement Agreement does not affect this language. No genuine issue of material fact exists and Plaintiffs respectfully request that this Court grant Plaintiff's Motion and hold that Plaintiffs are entitled to 3% of net product sales. Plaintiffs further request an award of reasonable attorney fees pursuant to the terms of the Settlement Agreement.

Dated this 12th day of June, 2009

**KimbleGrabb, PLLC**


by  s/Robert Grabb

Robert Grabb, Esq.
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Andrew Jacobs
Snell & Wilmer, LLP
ajacobs@swlaw.com

Joe Kroeger
Snell & Wilmer, LLP
jkroeger@swlaw.com

David Fleischer
Paul, Hastings, Hanofsky & Walker LLP
davidfleischer@paulhastings.com

s/Robert Grabb