**KimbleGrabb, P.L.L.C.**
7411 E. Tanque Verde Rd.
Tucson, Arizona  85715
Ph: 520.326.2500
KimbleLaw@aol.com

Attorneys / Plaintiffs / Counter Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| STEPHEN KIMBLE, an individual, and ROBERT GRABB, an individual | Case No. CIV 08-372-TUC-DCB (DTF) |
| Plaintiffs, | **COUNTER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING COUNTER CLAIMANT'S FIRST COUNTERCLAIM** |
| vs. | |
| MARVEL ENTERPRISES, INC., | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

Plaintiffs/Counter Defendants move, pursuant to rule 56 of the Federal Rules of Civil Procedure, for Summary Judgment on Defendant's/Counter Claimant's first counterclaim.   Counter Defendants seek a declaratory judgment that Counter Claimants continue to be responsible for certain obligations beyond May 25, 2010. This *Motion* is supported by the attached *Memorandum of Points and Authorities* together with the accompanying *Statement of Facts in Support of Plaintiffs' Motion for Summary Judgment*.

## Memorandum Of Points And Authorities

### Introduction

In paragraph 45 of its first counterclaim, Counter Claimant Marvel Enterprises, Inc. ("Marvel") seeks,

> . . . a judicial determination of its rights and duties, and a declaration that it is no longer required to pay plaintiffs "3% of 'net product sales'" under the Agreement based on sales of products after the expiration of the '856 patent. (Paragraph 45)

In this *Motion for Summary Judgment*, Counter Defendants ask this Court to declare that Marvel's obligations to pay royalties under the Agreement continue with respect to certain products after the expiration of the '856 patent.

### Background

Stephen Kimble is the inventor of a web shooting toy described in part in U.S. Patent No. 5,072,856 (referred to herein as the "'856 patent" or the "Kimble Patent"). (SOF 1)   In 1997 Kimble filed suit against Toy Biz, Inc. ("Toy Biz") in the United Stated District Court for the District of Arizona (the "Action") claiming that Toy Biz had infringed the '856 patent and had breached a verbal agreement to negotiate a reasonable royalty arising out of Toy Biz's use of a toy called the Web Blaster. ("Verbal Agreement)  (SOF 2)

In the Action, Kimble alleged that in 1990 he had met with Lou Schwartz, the president of Toy Biz, to discuss his patent application and related ideas.   Kimble further alleged that at that meeting Schwartz agreed that Toy Biz would not use the ideas disclosed by Kimble without first negotiating a reasonable royalty payment for their use. (SOF 3)

Kimble also alleged that Toy Biz subsequently made and sold a "Web Blaster" toy based on Kimble's ideas, but refused to pay Kimble any royalty. (SOF 4)

On Summary Judgment the District Court ruled as a matter of law that the Web Blaster did not infringe the Kimble Patent, but that the claims concerning the Verbal Agreement involved disputed issues of fact for a jury to decide.  (SOF 5)

In October 2000, the issues regarding the Verbal Agreement were tried before a jury that returned a verdict in favor of Kimble. The jury found that the Web Blaster manufactured by Toy Biz was covered by the Verbal Agreement and awarded Kimble damages in the form of a royalty of 3.5% of net product sales, past, present and future. (SOF 6)

Both parties appealed the judgment, and while the appeal was pending, the matter was settled.  The settlement agreement ("Agreement") gave Toy Biz rights in the Kimble Patent as well as the non-infringing toy that was litigated.   (SOF 7)  In exchange Toy Biz agreed to make both a lump-sum payment for past royalties and periodic payments for future royalties. (SOF 8)  The Agreement has no expiration date. (SOF 9)

In 2008 Plaintiffs filed the present lawsuit to enforce that Agreement.   In response, Marvel filed a counterclaim seeking a declaratory judgment that its obligations under the Agreement cease entirely at the expiration of the Kimble Patent (Counter Claimant's first counterclaim.)

In the Joint Report filed herein, Marvel took the position that enforcement of the Agreement beyond May 25, 2010, the patent's expiration date, would constitute patent misuse under the *Brulotte v. Thys,* 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

(1964), as applied in this circuit in the case of *Zila v. Tinnell*, 502 F.3d 1014, 1019 (9th Cir. 2007).   Counter Defendants contend that while Marvel's obligation to pay royalties for infringing toys ends when the patent expires, it is obligated to pay royalties for non infringing toys beyond the expiration of the patent.

### Legal Analysis

In *Brulotte v. Thys,* 379 U.S. 29 at 32, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964), the Supreme Court held that an agreement that extends a patent monopoly after the patent expires is not enforceable.   Apparently on that basis, Marvel now argues that it should not be required to make any royalty payments beyond the expiration of the '856 patent.   Brulotte was followed by *Zila v. Tinnell*, 502 F.3d 1014 at 1019 (9th Cir. 2007). There, the Circuit Court acknowledged that ". . . *Brulotte* indicates that under some circumstances patent owners cannot exact royalties for use of patented devices beyond the duration of their patents." *Id.* at 1019.   It narrowly applied the Brulotte holding saying, "So, except as required by *Brulotte* and its progeny, we shall endeavor to give effect to the intent of the parties and the bargain that they struck."  *Id.* at 1020. As the following discussion demonstrates, the Agreement does not project the patent monopoly beyond the expiration of the patent, and as such, *Brulotte* has no application.

The language in the Agreement regarding royalty payments expressly includes both "**product sales that would infringe the Patent ... as well as sales of the Web Blaster product that was the subject of the Action and to which the Judgment refers.**"  (SOF 9)  The Agreement clearly and explicitly covers two kinds of products for which a royalty is payable; those that infringe the Kimble patent, and those that do

- 4 -

not, but are encompassed within the Web Blaster concept that was the subject of the Action that resulted into the Agreement.  Once the Kimble Patent expires, there can be no infringement.  Under the Agreement, Marvel's obligation to pay royalties for those products will cease.  This is in perfect accord with the holding in *Brulotte, supra.*

However, Marvel has undertaken a second obligation; to pay royalties for products that do **not** infringe the Kimble Patent, but were the subject of the first Action. Every payment ever made by Marvel since the inception of the Agreement was for products that do not infringe the Kimble Patent, but were the subject of the first Action. (SOFs 10 and 11)  It should therefore come as no surprise that its obligation to pay extends beyond the life of the Kimble Patent.  Those obligations continue, also in accord with *Brulotte, supra.*

The District Court ruled that the toy at issue did not infringe the Kimble Patent, and Marvel admits that none of the payments made to Kimble were for toys that infringed the Kimble Patent. (SOF 11.)  Royalties for the sale of the Web Blaster products are clearly not tied to the term of the Kimble Patent.  Payment for these non-infringing toys beyond the expiration of the patent would in no way constitute an extension of the patent term in violation of *Brulotte  and Zila.*

The Plaintiffs position with regard to this issue is further demonstrated by the additional language in the Agreement that states:

> Except for the obligations undertaken by Marvel in this Agreement and **except for those obligations under the alleged verbal agreement that was the subject of this Action**, the Patent Holders hereby release and discharge Marvel and its directors . . . from all actions . . . whatsoever from the beginning of the world to the date of this Agreement.

(SOF 9)

This language clearly demonstrates that Marvel's obligations are not limited to products covered by the Kimble Patent.  It also has undertaken obligations regarding products covered by the verbal agreement that was the subject of the first action.

### Conclusion

In order to settle the underlying litigation, Marvel agreed to pay royalties for toys that infringe the Kimble Patent and toys that did not, but were the subject of the litigation.  In the eight years that this Agreement has been in effect, Marvel has never paid royalties for toys that infringe the Kimble Patent.  It has always paid for toys that were the subject of the litigation.  It is disingenuous for Marvel to now argue that expiration of the Kimble Patent means expiration of the obligation to pay.

Since Marvel's obligation to pay royalties for patented toys ends on May 25, 2010 (the expiration of the term of the Kimble Patent), *Zila*, in perfect harmony with *Brulotte,* requires this court to do no more than to give effect to the intent of the parties to the Agreement.

The Counter Defendants herein are not arguing that royalty payments for infringing toys should continue past the expiration date of the Kimble Patent.  Rather, royalty payments continue for non-infringing toys that were the subject of the litigation and those that are covered by the Verbal Agreement.  This is simply what the Agreement states.

For this reason, Counter Defendants respectfully request this Court declare that Marvel's obligation to pay royalties on non-infringing foam string web shooting toys that fall within the scope of the previous action continues after the May 25, 2010,

- 6 -

expiration of the Kimble Patent, and further, that the Agreement does not release Marvel from its obligations under the Verbal Agreement.

For the foregoing reasons, Counter Defendants pray this Court to grant their *Motion for Partial Summary Judgment*, to issue a Declaratory Judgment as set forth above, and to award Counter Defendants their reasonable attorney fees pursuant to the Agreement.

Dated this 1st day of July, 2009

**KimbleGrabb, PLLC**

by s/Robert Grabb

Robert Grabb, Esq.
Attorneys / Plaintiffs / Counter Defendants

1

## <u>CERTIFICATE OF SERVICE</u>

2

3
    I hereby certify that on July 1, 2009, I electronically transmitted the attached
document to the Clerk's Office using the CM/ECF System for filing and transmittal of a
Notice of Electronic Filing to the following CM/ECF registrants:

4

5
                            Andrew Jacobs
                          Snell & Wilmer, LLP
6
                          <u>ajacobs@swlaw.com</u>

7

8
                             Joe Kroeger
                          Snell & Wilmer, LLP
9
                          <u>jkroeger@swlaw.com</u>

10

11
                            David Fleischer
                  Paul, Hastings, Hanofsky & Walker LLP
                      <u>davidfleischer@paulhastings.com</u>

12

13

14
                            <u>s/Robert Grabb</u>

15

16

17

18

19

20

21

22

23

24

25