**KimbleGrabb, P.L.L.C.**
7411 E. Tanque Verde Rd.
Tucson, Arizona  85715
Ph: 520.326.2500
KimbleLaw@aol.com

Attorneys / Plaintiffs / Counter Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| STEPHEN KIMBLE, an individual, and ROBERT GRABB, an individual | Case No. CIV 08-372-TUC-DCB (DTF) |
| Plaintiffs, | **COUNTER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING COUNTER CLAIMANT'S THIRD COUNTERCLAIM** |
| vs. | |
| MARVEL ENTERPRISES, INC., | ORAL ARGUMENT REQUESTED |
| Defendant. | |

Counter Defendants move, pursuant to rule 56 of the Federal Rules of Civil Procedure, for Summary Judgment on Counter Claimant's third counterclaim.  This *Motion* is supported by the attached *Memorandum of Points and Authorities* together with the accompanying *Statement of Facts In Support of Counter Defendants' Motion for Summary Judgment Regarding Counter Claimant's Third Counterclaim.*

## Memorandum Of Points And Authorities

### Background

This motion, like Counter Defendant's previously filed Motions for Summary

Judgment, concerns the parties' obligations under their settlement agreement dated September 21, 2001 ("Agreement").

In its third counterclaim, Marvel alleges that it erred in paying Counter Defendants for "extra value items" of the Web Blaster.

> 54. By mistake, in respect of calendar year 2007 Marvel paid plaintiffs based on the total price of products consisting of kits containing a basic Web Blaster as well as additional Spider-Man related toys ("Extra Value Items") such as a Spider-Man mask.
> 55. Marvel believes that for kits containing extra value items, it should only be required to pay plaintiffs based on the percentage of the total price of the kits attributable to the basic Web Blaster plus one can of refill string as contemplated by the Agreement.
> 56. As a result of Marvel's mistaken failure to allocate between the basic Web Blaster and extra value items the amounts payable to plaintiffs under the Agreement in respect of calendar year 2007, plaintiffs have been over paid and unjustly enriched.

As the Court will see, contrary to Marvel's allegations, there was no "mistaken failure" by Marvel to exclude the price of items packaged with the Web Blaster.  The plain language of the Agreement supports a finding that Marvel is not permitted to decrease payments because of items it chooses to include as part of the product being sold.  In addition, the course of performance by the parties for seven years also supports such a finding.

### Facts

The Agreement at issue requires Defendant to pay Plaintiffs a royalty of 3% of net **product** sales. (SOF 1)  The products at issue (which Counter Claimant now for the first time refers to as "kits") contain a version of the Web Blaster as well as various other items (which Counter Claimant now refers to as "Extra Value Items"). (SOF 2)

Since 2001, Marvel has been selling products that contain versions of the basic

Web Blaster along with various other items including darts, dart shooters, stretchy webs, stretchy web throwers, missiles, missile launchers, masks, water tanks, multiple cans of web fluid and batteries. (SOF 3)  No matter what was partnered with the Web Blaster, it was sold as a single product carrying a single product sku number. (SOF 4)

Four times a year for seven years, Marvel provided quarterly reports on the net sales of these products. (SOF 5)  These reports itemized the sales of each **product** for which Counter Defendants were being paid. (SOF 6)  For seven years, Marvel made the corresponding royalty payments, without exception, and without objection, based on 100% of the net sales of these products.  Never was there a deduction taken for any of the other items included with the Web Blaster. (SOF 7)

In 2006, Marvel entered into a licensing agreement with Hasbro Inc, a toy manufacturer, effective 2007.   (SOF 8)   The agreement permitted Hasbro to manufacture the Marvel line of toys, including the Web Blaster. (SOF 9)  In exchange, Marvel would receive a percentage of Hasbro's net product sales. (SOF 10)  In the negotiations, Marvel intended to have Hasbro execute a Toy Technology Sublicense Agreement (T.T.S.A.) that would have obligated Hasbro to assume Marvel's financial obligations to Counter Defendants under the Agreement. (SOF 11)  Marvel provided Hasbro with a copy of the T.T.S.A., as well as a copy of the Kimble / Marvel settlement agreement and assignment. (SOF 12)

In 2007, Marvel became aware that, through inadvertence, oversight or neglect, Hasbro had never signed the T.T.S.A. (SOF 13)   It then attempted to have Hasbro sigh the TTSA, but Hasbro refused saying it was "not appropriate for us to sign –

particularly ones that on the surface seem to suggest that Hasbro should make further payments." (SOF 14)   Despite this, three days later Marvel's chief financial officer advised Counter Defendants that:

> I have confirmed that negotiations with Hasbro have concluded whereby they have assumed the responsibility to pay royalties owed to you, effective January 1, 2007.   The paperwork will soon follow between Marvel and Hasbro, so please rest assured that payment will soon be forthcoming on the balance owed.

(SOF 15)

Hasbro never signed the TTSA and no paperwork followed. (SOF 16)   As a result, Marvel remained responsible for the royalty payments.   Thereafter, Marvel began cutting royalty payments to Counter Defendants by taking deductions for multi-functions and added items. (SOF 17)

## Legal Analysis

The claim for unjust enrichment set forth in Counter Claimant's third counterclaim is defective for several reasons.   The plain language of the Agreement prevents Defendant from allocating between the Web Blaster and Extra Value Items, and the course of performance clearly demonstrates that Counter Defendants are to be paid royalties based on 100% of net product sales of qualifying products, whether they contain Extra Value Items or not.

## Plain Language of the Agreement

The language of the Agreement at issue states that Defendant is to pay Plaintiffs "3% of 'net product sales'".   The Agreement does not contain any provision for allocation of royalties based on the contents of the product.  The Agreement does not distinguish between a product that is comprised of a Web Blaster or one that

contains a Web Blaster and some additional item or items.  Marvel's claim is nothing more than an attempt to add to the Agreement a provision that is simply not present.

Where, as here, an agreement "is complete, clear and unambiguous on its face [, it] must be enforced according to the plain meaning of its terms. . ." *Greenfield v. Philles Records, Inc.*, 98 NY2d 562, 569 (2002).  The plain meaning of the terms of the agreement requires Marvel to pay plaintiffs 3% of net product sales on products covered by the Agreement, whether or not the product contains added items.   If Marvel chooses to bundle items with the Web Blaster and then sell that bundle as one product, it may do so.  However, pursuant to the clear language of the Agreement, it would owe a corresponding royalty for that product.

### Course Of Performance

If after looking at the plain meaning of the contract there remains a question as to a parties obligations, courts look to the parties past course of performance. *(Fed. Ins. Co. v. Ams. Ins. Co.*, 691 N.Y.S.2d 508, 258 A.D.2d 39 [1st Dept 1999].)  The court there addressed this very issue and held,

> Furthermore, the parties' course of performance under the contract is considered to be the "most persuasive evidence of the agreed intention of the parties." (*Webster's Red Seal Publs. v. Gilberton World-Wide Publs.*, 67 A.D.2d 339, 341, *affd* 53 N.Y.2d 643.)  "Generally speaking, the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence." (*Old Colony Trust Co. v. City of Omaha*, 230 U.S. 100, 118; *see, IBJ Schroder Bank & Trust Co. v. Resolution Trust Corp.*, 26 F.3d 370, 374 [2d Cir], cert denied 514 U.S. 1014.) As Restatement (Second) of Contracts § 202, comment g has expressed it, "The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning."  (*Id.* at 44.)

As noted above, Counter Defendants and Marvel have a more than seven year history of performance under the Agreement.  Since the Agreement began, Marvel has been selling the Web Blaster with additional items and has consistently paid Plaintiffs royalties without allocating between the Web Blaster and the other items.  These royalties have **always** been based on 100% of the net product sales of these toys.  This extensive history of performance is a clear and unambiguous reflection of the parties understanding of their obligations.

### Conclusion

The Agreement at issue provides for payment of royalties based on net product sales.  It contains no provision or mechanism for an allocation of the product.

Since its inception, Marvel and Counter Defendants have understood the Agreement to require that payment be based upon the net product sales.  Only now, more than seven years into the Agreement (and coincidentally after Marvel neglected to have Hasbro sigh the TTSA), does Marvel come up with a new interpretation that benefits Marvel and harms Counter Defendants.

The clear language of the Agreement does not permit Marvel to decrease payment because of items it chooses to package with the Web Blaster.  The prior dealings of the parties reflect that neither intended there to be such an allocation.

For each of the foregoing reasons, Counter Defendants respectfully request this Court grant this Motion for Summary Judgment on Counter Claimant's third counterclaim, and rule that the Agreement obligates Defendant to pay Plaintiffs a 3% royalty on 100% of the net product sales of products, whether the product contains additional items or not and that Counter Defendants be awarded their reasonable

attorneys fees.

Dated this 6th day of July, 2009

**KimbleGrabb, PLLC**

by  s/Robert Grabb

Robert Grabb, Esq.
Attorneys / Plaintiffs / Counter Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 6th 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Andrew Jacobs
Snell & Wilmer, LLP
ajacobs@swlaw.com

Joe Kroeger
Snell & Wilmer, LLP
jkroeger@swlaw.com

David Fleischer
Paul, Hastings, Hanofsky & Walker LLP
davidfleischer@paulhastings.com

s/Robert Grabb