David Fleischer (*pro hac vice*)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, NY 10022
Telephone:  (212) 318-6000
davidfleischer@paulhastings.com

Andrew M. Jacobs (AZ Bar. No. 021146)
Joseph A. Kroeger (AZ Bar. No. 026036)
SNELL & WILMER L.L.P.
One South Church Avenue
Suite 1500
Tucson, AZ  85701-1630
Telephone:  (520) 882-1207
ajacobs@swlaw.com
jkroeger@swlaw.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STEPHEN KIMBLE, an individual, and ROBERT GRABB, an individual,<br><br>    Plaintiffs,<br><br>v.<br><br>MARVEL ENTERPRISES, INC.,<br><br>    Defendant. | Case No.  CIV 08-372-TUC-DCB (DTF)<br><br>**STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

1.     Stephen Kimble is the inventor of a web shooting toy described in part in US Patent No. 5,072,856 (referred to herein as the "Kimble patent").  (*See* Doc. No. 49-2 ¶ 1).

2.     The Kimble patent expires no later than May 25, 2010.  (*See* Doc. No. 44 ¶ 1 (admitting ¶ 31 of Doc. No. 33)).

3.     In 1997 Kimble filed suit against Toy Biz, Inc. ("Toy Biz"), now known as Marvel Entertainment, Inc. ("Marvel"), in the United States District Court for the District of Arizona (the "Action") claiming that Marvel had infringed the Kimble patent and had

breached a verbal agreement to negotiate a reasonable royalty arising out of Marvel's use of a toy called the Web Blaster (the "Verbal Agreement").  (*See* Doc. No. 49-2 ¶ 2).

4.      The Web Blaster is a role play toy whose primary play value is to allow the user to adopt aspects of Marvel's Spider-Man character by shooting foam string. (Exh. 1, Kimble Dep. Tr. 45:9-14). [1]

5.      The District Court ruled as a matter of law that the Web Blaster did not infringe the Kimble patent, but that the claims concerning the Verbal Agreement involved disputed issues of fact for the jury to decide.  (*See* Doc. No. 49-2 ¶ 5).

6.      In October 2000, the issues regarding the Verbal Agreement were tried before a jury that returned a verdict in favor of Kimble.  The jury found that the Web Blaster manufactured by Marvel was covered by the Verbal Agreement and awarded Kimble damages in the form of a royalty of "3.5% of net product sales, past, present, and future."  (*See* Doc. No. 49-2 ¶ 6).

7.      Both parties appealed the judgment, and while the appeal was pending, the matter was settled pursuant to a September 21, 2001 Agreement (the "Agreement").  The Agreement gave Marvel rights in the Kimble patent as well as the non-infringing toy that was litigated.  (*See* Doc. No. 49-2 ¶ 7).

8.      Paragraph 3 of the Agreement provides:

> Marvel agrees to purchase from the Patent Holders and the Patent Holders agree to sell to Marvel the Patent which will be evidenced by an instrument of assignment in the form of exhibit C hereto.  The purchase price for the Patent shall be payable to the Patent Holder as follows:
>
> a.  $516,214.62 upon execution and delivery of this Agreement; and
>
> b.  3% of "net product sales" (as such term is used in the Judgment) excluding refill royalties made after December 31, 2000.   For purposes of this

[1] "Exh. __" references are to exhibits attached to the accompanying declaration of Jason T. Christiansen dated July 15, 2009.

paragraph 3.b, "net product sales" shall be deemed to include product sales that would infringe the Patent but for the purchase and sale thereof pursuant to this Agreement as well as sales of the Web Blaster product that was the subject of the Action and to which the Judgment refers.

(Exh. 2 ¶ 3; *see also* Doc. No. 47-2 at p. 2).

9.      The Agreement has no expiration date.  (Exh. 2; *see also* Doc. No. 49-2 ¶ 9).

10.     Paragraph 12 of the Agreement provides:

This Agreement contains the entire agreement among the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous arrangements or understandings with respect thereto.

(Exh. 2 ¶ 12).

11.     Paragraph 14 of the Agreement provides:

This Agreement shall be construed in accordance with the laws of the State of New York applicable to agreements made and to be performed therein.

(Exh. 2 ¶ 14; *see also* Doc. No. 47-2 ¶ 6).

12.     Paragraph 17 of the Agreement provides:

In any action brought to enforce this Agreement, the prevailing party shall be entitled to an award of reasonable attorney's fees and costs.

(Exh. 2 ¶ 17; *see also* Doc. No. 47-2 ¶ 7).

13.     Plaintiffs disagreed with some of the royalty payments made by Marvel to Kimble and "exercised their right to audit Marvel" in the fourth quarter of 2007.  (*See* Doc. No. 23 ¶¶ 23-30).

14.     Plaintiffs sued Marvel on May 28, 2008 in Pima County Superior Court, Case No. C20083621 regarding their objections to Marvel's royalty payments.

15.     Marvel removed the action from the Pima County Superior Court to the District Court for the District of Arizona on June 27, 2008 (Doc. No. 1) and thereafter

1  filed an answer and counterclaims.

2       16.    Plaintiffs filed the first amended complaint with this Court on November 18,

3  2008.  (*See* Doc. No. 23).

4       17.    In response, Marvel filed a motion to dismiss three counts in plaintiffs' first

5  amended complaint and plaintiffs subsequently agreed to dismiss those counts without

6  filing a response to Marvel's motion.  (*See* Doc. Nos. 25 and 29).

7       18.    Marvel filed its answer to the first amended complaint and amended

8  counterclaims on January 26, 2009.  (*See* Doc. No. 33).  Marvel's first counterclaim seeks,

9  among other things, "a judicial determination of its rights and duties, and a declaration

10  that (a) it is no longer required to pay plaintiffs '3% of "net product sales"' under the

11  Agreement based on sales of products after the expiration of the '856 patent…."  (*See*

12  Doc. No. 33 ¶ 45).  Marvel's first counterclaim also seeks an award of attorney fees

13  pursuant to paragraph 17 of the Agreement and/or pursuant to A.R.S. 12-341.01(A).  (*See*

14  Doc. No. 33 ¶¶ 46-47).

15       19.    On August 28, 2001, Robert Grabb sent an email to Marvel's co-counsel

16  David Fleischer stating:

> Our concept of a final deal between Kimble and Toy
> Biz [Marvel's predecessor] is that Toy Biz will buy the
> Kimble patent for approximately $531,000 and will pay
> a royalty of 3% of sales on toys it sells in the future that
> are based on the patent or the disclosures Kimble made
> to Toy Biz over 10 years ago (no need to rehash what
> the disclosures were as they are contained in the
> transcript of the trial).
>
> Our reasoning (and we had asked Claudia to address
> this issue at the mediation) is as follows:  (Assuming
> the Judgment is upheld on appeal.)  If Toy Biz were to
> make a new toy, different from the Web Blaster, but
> covered by either the patent or the disclosures made to
> Toy Biz by Kimble, then Kimble would no doubt have
> a new claim against Toy Biz.

1

2

3

4

5

> In fact, it has always been our belief that the better version of the toy is the one that has the canister attached somewhere around the waist area with a pressurized tube running along the arm.  Should Toy Biz elect to make this toy based upon the patent or disclosures, we would be entitled to a 3% royalty.

6

(Exh. 3, August 28, 2001 email from Robert Grabb to David Fleischer).

7        20.     On January 9, 2008 co-plaintiff Robert Grabb sent an email to Ken West,

8   Marvel's Chief Financial Officer, expressing concern regarding payments for a version of

9   the Web Blaster toy called the "Ultimate Web Blaster."  In stating his opinion that

10  plaintiffs did not receive the full amount due from Hasbro's sales of this particular toy,

11  Mr. Grabb stated that "[c]learly the Ultimate Web Blaster, along with other Web Blaster

12  products currently on the market would infringe the Patent."  (Exh. 4, January 9, 2008

13  email from Robert Grabb to Ken West).

14        21.     In a February 7, 2008 email, plaintiffs maintained that they are entitled to

15  receive payments "for as long as there is a Web Blaster toy, and assuming there will be

16  such a toy on the market for many many years to come." (Exh. 5, February 7, 2008 email

17  from Robert Grabb to  Ken West; *see* Doc. No. 44 ¶ 1 (admitting ¶¶ 32-33 of Doc. No.

18  33)).

19

20        22.     Stephen Kimble testified that it is his belief as of April 24, 2009 that

21  Marvel's Web Blaster products did not infringe the Kimble patent because "that was the

22  only ruling we've ever gotten was that it did not."  (Exh. 1, Kimble Dep. Tr. 68:24-69:2).

23        23.     Stephen Kimble further testified regarding paragraph 3 of the Agreement

24  that "whether it infringes the patent or whether it is a version of the toy that was litigated,

25  to me, it's you know, it is an irrelevant issue…"  (Exh. 1, Kimble Dep. Tr. 72:5-7).

26        24.     Plaintiffs, in their July 1, 2009 motion for summary judgment papers, now

27  assert that "[n]one of the payments made to Kimble were for toys that infringed the

28

1   Kimble Patent."  (*See* Doc. No. 49-2 ¶ 11).

2       25.     Plaintiffs, in their July 1, 2009 motion for summary judgment papers, now

3   contend that "[e]very payment ever made by Marvel since the inception of the Agreement

4   was for products that do not infringe the Kimble Patent, but were the subject of the first

5   Action."  (*See* Doc. No. 49-2 ¶ 10).

6       26.     Marvel has stated that it does not believe that any products Marvel sold

7   infringe the Kimble patent based on the fact that Judge Collins made such a ruling in the

8   prior lawsuit.  (*See* Doc. No. 49-9 at p. 5).  Marvel has also stated that it "paid royalties

9   pursuant to paragraph 3(b) of the September 21, 2001 Settlement Agreement" without

10  further distinction.  (*See* Doc. No. 49-8 at p. 5).

11

12      27.     Marvel's Chief Financial Officer, Ken West, testified that his

13  "understanding is that we [Marvel] have an obligation of 3 percent of some value

14  associated with a Silly String Shooting element that allows a child or a buyer of the

15  product to role play as though they're Spiderman."  (Exh. 6, West Dep. Tr. 11:22-12:8).

16      28.     Marvel never made a differentiation in its royalty reports for payments for

17  toys that Marvel believed "would infringe the Patent but for the purchase and sale thereof

18  pursuant to this Agreement" and payments for "sales of the Web Blaster product that was

19  the subject of the Action and to which the Judgment refers."  (*See* Doc. No. 48-6 as an

20  exemplary royalty report demonstrating no distinction for any payments).

21

22      DATED this 15th day of July, 2009.

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: _/s/ David Fleischer_____
       David Fleischer (*pro hac vice*)
       75 East 55th Street
       New York, NY 10022

       SNELL & WILMER L.L.P.
       Andrew M. Jacobs
       Joseph A. Kroeger
       One South Church Avenue
       Suite 1500
       Tucson, AZ 85701-1630

       Attorneys for Defendant

1

## **CERTIFICATE OF SERVICE**

2

3        I hereby certify that on July 15, 2009, I electronically transmitted the attached

4    document to the Clerk's Office using the ECF System for filing and transmittal of a

5    Notice of Electronic Filing to the following ECF registrant:

6
            Robert Grabb
7            rgrabb@aol.com
            KimbleGrabb P.L.L.C.
8            7411 E. Tanque Verde Rd.
            Tucson, Arizona 85715
9            (520) 326-2500

10

11                                          /s/ David Fleischer
                                           David Fleischer
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28