**KimbleGrabb, P.L.L.C.**
7411 E. Tanque Verde Rd.
Tucson, Arizona  85715
Ph: 520.326.2500
kimblelaw@aol.com

Attorneys / Plaintiffs / Counter Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| STEPHEN KIMBLE, an individual, and ROBERT GRABB, an individual <br><br> Plaintiffs, <br><br> vs. <br><br> MARVEL ENTERPRISES, INC., <br><br> Defendant. | Case No. CIV 08-372-TUC-DCB (DTF) <br><br> **OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

As a preliminary matter, it should be noted that Defendant Marvel has cited the cases of *Rule v Brine, Inc.,* 85 F.3d 1002 (2d Cir. 1996), *Bettis Rubber Co. v. Kleaver,* 233 P.2d 82 (2d Dist. 1951), *Pipkin v FMC Corp.,* 427 F.2d 353 (5th Cir. 1970), and *Aronson v Quick Point Pencil Co.,* 440 U.S. 257 (1979) for propositions that, according to Marvel's own description, are not applicable to the facts of the present case before the Court.  Therefore, inasmuch as it appears that the parties agree that these cases are not relevant to the issues of this motion, the Plaintiffs have not addressed them in this response.

Like Plaintiffs, Defendant Marvel has filed its own *Motion for Summary Judgment* on the issue of whether the Settlement Agreement between the parties (the

"Agreement") provides for payment of royalties past the expiration date of the Kimble Patent (U.S. No. 5,072,856).  However, throughout its motion, Defendant attempts to raise an issue of fact regarding whether the products in question actually infringe the '856 Patent.  This is not at issue.  Marvel has admitted that they do not (Exhibit 7 to Plaintiffs' *Statement of Facts* in support of their July 1, 2009, *Motion for Summary Judgment*) and Plaintiffs agree.

Given this admission and the fact that Defendant has filed its own *Motion for Summary Judgment,* for purposes of this *Motion*, the question now before the Court is a pure issue of law to be decided on summary judgment.  Accordingly, these factual allegations are also not addressed in this response.

Throughout its *Motion*, Defendant argues that Plaintiffs never made a distinction between patent rights and non-patent rights.  This is incorrect because the contract provision repeatedly cited by both parties clearly distinguishes between patent and non-patent rights.  The contract recites "product sales that would infringe the patent ... **as well as** sales of the Web Blaster product that ... ."  One wonders what significance the Defendant attributes to the "**as well as**" language if the contract intended to cover only products that infringe.  Defendant's position on this issue is untenable and patently inconsistent with the explicit language of the Agreement.

Citing *Brulotte v. Thys*, 379 U.S. 29 (1964), Defendant argues that "[t]he Agreement, which purports to require Marvel to pay royalties for the use of the patent and non-patent rights after the Kimble Patent expires, is unenforceable as a matter of federal patent law." In *Brulotte* the Supreme Court held that the licensing agreements at issue were unenforceable because the "licensor was using the licenses to project its

monopoly beyond the patent period."   379 U.S. at 32.   However, no such thing is happening in this case.

The Agreement, contrary to Marvel's framing of the argument, does not purport to require Marvel to pay royalties for the use of patent rights after the Kimble Patent expires.   Plaintiffs are not claiming to be entitled to post-expiration royalties for products that would infringe the patent.   They are only claiming to be entitled to payment of royalties for products that **do not** infringe the patent.   Therefore, the <u>only</u> issue now before the Court is whether the provision of the Agreement that provides for payment for non-patented toys after the expiration of the patent violates patent law so as to render that provision unenforceable under *Brulotte.*

The *Brulotte* decision was thoroughly discussed by the Ninth Circuit in *Zila v. Tinnell*, 502 F.3d 1014 (9th Cir. 2007).   The analysis of *Zila* makes crystal clear that *Brulotte* only applies to attempts to extend the payment of royalties for **patented** products beyond the expiration of a patent. Therefore, it does not apply to the issue now before the Court.   The court in *Zila* concluded,

> Simply put, *Brulotte* indicates that under some circumstances patent owners cannot exact royalties for use of **patented devices** beyond the duration of their patents. (Emphasis added.)
> *Zila, supra,* at 1019.

The pertinent part of the Agreement between the parties to this dispute provides in Paragraph 3 that Plaintiffs are entitled to royalties for the following:

1) the Web Blaster product that was the subject of the action (which was found by judgment and now admitted by Defendant **not to infringe** the patent); and

2) products that would infringe the Patent but for the purchase and sale thereof.

Therefore, continued payment of post-patent-expiration royalties for products falling under the first portion of the provision (products that do not infringe) is entirely consistent with the rule of *Brulotte*.

Marvel's contractual obligation after the expiration of the Kimble patent is reduced to paying royalties only for the Web Blaster product that was the subject of the original action between the parties (a non-infringing toy).   Therefore, in full accordance with the *Zila* language quoted above, the payment of royalties for non-infringing toys beyond the duration of the Kimble Patent is not contrary to the *Brulotte* rule and is fully sanctioned by the *Zila* court.

Defendant has attempted to advance its argument by claiming that "[t]he Agreement between Marvel and plaintiffs is a 'hybrid' agreement requiring a definitive time limit linked to the life of the Kimble patent."  Such "hybrid" agreements are ones that deal with both patent rights and non-patent rights, such as trade secrets and trademarks.   Defendant implies that because the Agreement at issue is a hybrid agreement and the agreements at issue in *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365 (11th Cir. 1983), were hybrid agreements, this Court must rule that the Agreement is unenforceable as the court ruled in *Pitney Bowes, Inc., supra.*   In particular, at pages 12-13 of its *Motion*, Defendant states:

> Several of the long line of cases from *Brulotte* to *Zila* specifically dealt with what the cases refer to as "hybrid" agreements that license both patent rights and non-patent rights at a constant royalty rate and **fail to distinguish between the two sets of rights – as is the case of the Agreement between Marvel and plaintiffs.** For example, in *Pitney Bowes, Inc. v. Mestre*, the Eleventh Circuit held that a "hybrid" agreement licensing both patents and trade secrets was unenforceable after the patent's expiration. 701 F.2d at 1373. (Emphasis added.)

4

However, the Agreement between Plaintiffs and Defendant does not provide for payment of a single royalty covering both patent rights and trade-secret rights incorporated into the same product, as in *Pitney Bowes*.  The Agreement in issue here contemplates royalties for two distinct types of toys.  The first is a toy that infringes and the second is a toy that does not but was the subject of the earlier litigation.  The same royalty **rate** (<u>not the same royalty</u>) of 3% applies, but the products are clearly different and separable.  For Defendant to say that the Settlement Agreement fails to distinguish between the two sets of rights is simply incorrect.  It seems as though Defendant would agree that a royalty of 2.9% for infringing products and 3.1% for non-infringing products would be allowed, but a royalty of 3% for both is not, a position that is untenable on its face.

The agreements for the sale of both trade secrets and patents in *Pitney Bowes* that were ruled to be unenforceable called for royalty payments for patent and non-patent rights that were **both** embodied in the machines that infringed the patent.  As such, had the payments continued beyond the patent-expiration date, they would indeed have extended the monopoly beyond the patent term, in violation of *Brulotte*.  This was made clear by the *Pitney Bowes* court when it noted:

> As in Brulotte, two provisions in the agreement suggest that the patentee used the leverage of his patent to project its monopoly beyond the 17-year patent period. First, the "exclusive rights" granted under the agreement applied equally before and after expiration of the patent. Like the assignment and removal restrictions on the hop-picking machines in Brulotte, the grant of exclusive rights is "pertinent to protection of the patent monopoly," but its "applicability to the post-expiration period is a **telltale sign that the licensor was using the license to project its monopoly beyond the patent period**." 379 U.S. at 32, 85 S.Ct. at 179.
> *Pitney Bowes, supra,* at 1373.  (Emphasis added.)

These are not the facts of the instant case, where Defendant is required to make payments **only** for non-infringing products beyond the term of the Kimble patent.

The *Zila* court cited *Meehan v. PPG Industries, Inc.,* 802 F.2d 881 (7th Cir. 1986), which also dealt with a hybrid agreement similar to the agreement in *Pitney Bowes*.  Royalties were again paid for both patent and non-patent rights only for products that had infringed the patent.  Citing *Brulotte*, the *Meehan* court stated:

> **Without evidence that the post-expiration royalties were not tied to the patent, the Court assumed that they were. "**In light of those considerations, we conclude that a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful *per se.*" *Id.*
> *Meehan, supra,* at 883-884.  (Emphasis added.)

Again, the Agreement before this Court differs in the same material way from the agreement decided in the *Meehan* case.  It does not provide for continuation of patent-right protection beyond the term of the patent and the post-expiration royalties are not tied to the patent.  Upon expiration, Defendant will be required to pay royalties only on a non-infringing toy.

Without regard to the express language of the Settlement Agreement discussed above, Marvel claims that the patent and non-patent rights are inseparable.  This is just plainly inaccurate and runs against Defendant's own charge, at page seven of its *Motion*, that "[t]he Court must construe a contract based on the written language if the terms of such contract are unambiguous. *Welles v. Turner Entm't Co.*, 503 F.3d 728, 735 (9th Cir. 2007) (relying on New York law and citing *Nichols v.Nichols*, 306 N.Y. 490, 492, 119 N.E.2d 351, 353 (1954))."

Case law is replete with instances where the court refused to find that patent and non-patent rights were indistinguishable where a distinction could be made.  For

instance, in *Baladevon, Inc. v. Abbott Laboratories, Inc.*, 871 F. Supp. 89, (Mass. 1994), the court wrestled with a hybrid agreement where the plaintiff sought to enforce patent, trademark and other non-patent rights in a device that had yet to be patented. The court noted:

> Four Circuits have struggled with the question of the enforceability of "hybrid royalty agreements" — agreements, such as the one before the court, that exchange royalties for a mix of patent and non-patent rights — after *Lear,Brulotte* and *QuickPoint*. A consensus has emerged. **Where a licensing agreement fails to distinguish** between patent and non-patent rights in royalty payments, and a patent is invalidated, *Lear* precludes enforcement of the contract according to its terms **but does not preclude compensation for the non-patent rights**.
> *Baladevon, supra,* at 94.  (Emphasis added.)

At page 96, the court continued,

> There is a second, even more significant, distinction between this case and the line of cases extending Lear to the context of hybrid royalty agreements. In each of those cases, the court was compelled to invalidate the whole agreement, because **it was impossible to disentangle the consideration given for the invalid patent from the consideration given for non-patent rights.** Each court recognized, **however, that the plaintiff was still entitled, on the theory of unjust enrichment, to that portion of the consideration (if any) that was designed to compensate it for non-patent rights**. See Chromalloy, 716 F.2d at 685; Span-Deck, 677 F.2d at 1247; St. Regis, 552 F.2d at 315. (Emphasis added.)

In the instant case, the Settlement Agreement sets out explicitly the consideration for non-patent rights.  It is the consideration to be paid for the non-infringing products that were the subject of the earlier action between the parties. Separate from the 3% royalty due for infringing products, the Agreement provides that Defendant pay a 3% royalty for sales of these non-infringing toys.  The royalty for infringing products ends when the Kimble patent expires.  The royalty for non-infringing products that were the subject of the earlier action between the parties

7

continues.  As the court noted in *Portney v. Ciba Vision Corporation,* (Case number SACV 07-0854 AG (MLGx) C.D.Cal. 6-17-2008), "a device cannot simultaneously be "covered" and "not covered" by Patent Rights."  *Id.*, at 6.

## Conclusion

The Agreement at issue does not contemplate royalty payments for patented devices past the Kimble Patent's expiration date.  That obligation to pay ends when the Kimble patent expires.  Marvel's obligation to pay continues past the patent expiration date for those toys that were the subject of the earlier action.  Accordingly, in accordance with the holdings of *Zila* and *Brulotte,* Plaintiffs respectfully request that the Court deny Defendant's *Motion for Summary Judgment*.

RESPECTFULLY SUBMITTED  this 17th day of August, 2009.


**KimbleGrabb, PLLC**


by  s/Robert Grabb___

Robert Grabb, Esq.
Attorneys / Plaintiffs / Counter Defendants

CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Andrew Jacobs
Snell & Wilmer, LLP
ajacobs@swlaw.com

Joe Kroeger
Snell & Wilmer, LLP
jkroeger@swlaw.com

David Fleischer
Paul, Hastings, Hanofsky & Walker LLP
davidfleischer@paulhastings.com

s/Robert Grabb