David Fleischer (*pro hac vice*)
Jason T. Christiansen (*pro hac vice*)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, NY 10022
Telephone: (212) 318-6000
davidfleischer@paulhastings.com

Andrew M. Jacobs (AZ Bar. No. 021146)
Joseph A. Kroeger (AZ Bar. No. 026036)
SNELL & WILMER L.L.P.
One South Church Avenue
Suite 1500
Tucson, AZ 85701-1630
Telephone: (520) 882-1207
ajacobs@swlaw.com
jkroeger@swlaw.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STEPHEN KIMBLE, an individual, and ROBERT GRABB, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>MARVEL ENTERPRISES, INC.,<br><br>Defendant. | Case No. CIV 08-372-TUC-DCB (DTF)<br><br>**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  PLAINTIFFS' ATTEMPT TO REWRITE THE AGREEMENT TO AVOID
     *BRULOTTE* AND ITS PROGENY SHOULD BE REJECTED.......................................... 1

     A.   "3% of net product sales" is the same royalty, not just the same royalty rate. ......... 3

     B.   There is no distinction between the patent and non-patent rights in the royalty
          provision......................................................................................................................... 4

     C.   The *Baladevon* case relied on by plaintiffs is inapplicable...................................... 5

III. CONCLUSION .................................................................................................................... 6

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Baladevon, Inc. v. Abbott Labs, Inc.*,
    871 F. Supp. 89 (D. Mass. 1994) .................................................................................... 5, 6

*Boggild v. Kenner Prods., a Division of CPG Prods. Corp.*,
    776 F.2d 1315 (6th Cir. 1985) ............................................................................................ 2

*Brulotte v. Thys Co.*,
    379 U.S. 29 (1964) ............................................................................................................. 2

*Pitney Bowes, Inc. v. Mestre*,
    701 F.2d 1365 (11th Cir. 1983) ...................................................................................... 2, 6

*Zila, Inc. v. Tinnell*,
    502 F.3d 1014 (9th Cir. 2007) ............................................................................................ 6

## I. INTRODUCTION

Plaintiffs concede in their opposition to Marvel's motion for summary judgment that no disputed facts preclude granting summary judgment on Marvel's claim that its payment obligations under the Agreement terminate upon expiration of the Kimble patent. Plaintiffs' only response to the overwhelming weight of legal authority cited in Marvel's motion is an attempt to torture the plain language of the Agreement into a different agreement to avoid the applicable legal precedent. That legal precedent holds that when a license agreement does not differentiate between royalty payment obligations for licensed patent and non-patent rights, the obligation to pay royalties under the agreement expires upon expiration of the licensed patent rights. Because the Agreement at issue in this case makes no distinction between Marvel's royalty obligations for licensed patent rights and non-patent rights, Marvel's royalty payment obligations must terminate when the Kimble patent expires on May 25, 2010. It is inappropriate for plaintiffs to try and redraft – or ask this Court to redraft – what is agreed by all parties to be an unambiguous royalty provision so that plaintiffs can effectively extend the reach of the Kimble patent in perpetuity.

## II. PLAINTIFFS' ATTEMPT TO REWRITE THE AGREEMENT TO AVOID *BRULOTTE* AND ITS PROGENY SHOULD BE REJECTED.

The simple fact is that during this litigation, plaintiffs have realized that the Agreement does not distinguish between royalties for patent rights and royalties for non-patent rights either during the patent's life or after it expires. Not only is there simply a single royalty, but the description of the products which require royalty payments are in the exact same sentence. Plaintiffs know that this is a fact that was critical to the holding in *Brulotte* and its progeny:

> The present licenses draw no line between the term of the patent and the post-expiration period. The same provisions as respects both use and royalties are applicable to each. The contracts are, therefore, on their face a bald attempt to exact the same terms and conditions for the period after the patents have expired as they do for the monopoly period. We are, therefore, unable to conjecture what the bargaining

- 1 -

> position of the parties might have been and what resultant arrangement might have emerged had the provision for post-expiration royalties been divorced from the patent and nowise subject to its leverage.

*Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964); *see Boggild v. Kenner Prods., a Division of CPG Prods. Corp.*, 776 F.2d 1315, 1319 (6th Cir. 1985) ("enforcement of royalty provisions for other rights which conflict with and are indistinguishable from royalties for patent rights is precluded."). Every Court of Appeals to consider the issue has condemned agreements such as the one at issue in this case which purports to require royalty payments after the expiration of a patent because the Court is unable to separate the portion that may be extending the patent monopoly from the rest of the Agreement and "it is reasonable to assume that at least some part of the post-expiration payment constituted an effort to extend payment for patent rights beyond the patent period" when an agreement requires a party "to pay royalties at the same rate and on the same basis after the patents expired that it paid while the patent was in effect." *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1373 (11th Cir. 1983)

Contrary to plaintiffs' argument that the Agreement in this case does not "project its monopoly beyond the patent period," the record indicates otherwise. (*See* Doc. No. 63 at pp. 2-3). It is undisputed that on January 9, 2008, plaintiff Robert Grabb told Marvel that "[c]learly the Ultimate Web Blaster, along with other Web Blaster products currently on the market would infringe the Patent." (July 15 SOF ¶ 20; August 17 SOF ¶ 1).[1] Less than a month later, plaintiffs maintained that they are entitled to receive payments "for as long as there is a Web Blaster toy, and assuming there will be such a toy on the market for many many years to come." (July 15 SOF ¶ 20; August 17 SOF ¶ 1). This undisputed evidence demonstrates that plaintiffs are attempting to extend the monopoly of the Kimble

---

[1] "July 15 SOF" refers to the July 15, 2009 statement of material facts in support of defendant's motion for summary judgment, Doc. No. 55. "August 17 SOF" refers to the August 17, 2009 plaintiffs' statement of facts in opposition to defendant's motion for summary judgment, Doc. No. 63-1. "September 4 SOF" refers to the September 4, 2009 additional statement of material facts in support of defendant's motion for summary judgment, filed concurrently herewith.

- 2 -

patent and extort more money from Marvel "for many many years" beyond its expiration and is exactly the type of situation *Brulotte* and its progeny forbid.

Because plaintiffs recognize that the Agreement as written contains no way to distinguish between the patent and non-patent rights, whether based on a changed royalty rate, on time, or some other factor, they attempt to reinterpret the Agreement with the benefit of hindsight to avoid summary judgment. Plaintiffs even go so far as to rewrite a provision that describes "net product sales" in a single sentence as two separate provisions to manufacture an artificial distinction in the royalty that simply does not exist in the plain language of the Agreement. (*See* Doc. No. 63 at p. 3). As discussed below in more detail, the Agreement provides no meaningful way to separate the patent rights from the non-patent rights; plaintiffs are not privileged at this late date to rewrite an unambiguous Agreement.

**A.     "3% of net product sales" is the same royalty, <u>not just the same royalty rate.</u>**

Plaintiffs' opposition to Marvel's motion for summary judgment relies entirely on language that plaintiffs now wish the Agreement had contained, not on the plain language that the parties actually agreed to and incorporated into the Agreement. Quite simply, the Agreement only requires Marvel to pay "3% of net product sales" and then contains a separate sentence clarifying that "net product sales" includes the patent rights "as well as" non-patent rights. The Agreement does not provide any type of separation of royalties for patent-based rights and non-patent rights as would be the case under plaintiffs' strained reading of the Agreement. Without this separation of the royalties for these two types of rights or some other meaningful distinction, the Agreement is exactly like the "hybrid" agreement analyzed in *Brulotte, Pitney Bowes,* and their progeny which dictate a holding that Marvel's royalty obligations terminate upon expiration of the Kimble patent.

Plaintiffs' entire argument as to why this is not a "hybrid agreement" such as the one in *Brulotte* and *Pitney Bowes* is based on a fundamentally flawed premise. Plaintiffs contend that the patent rights and non-patent rights in paragraph 3(b) of the Agreement are

- 3 -

1  charged the same royalty rate, but not the same actual royalty.  (*See* Doc. No. 63 at 5
2  (stating "The same royalty **rate** (not the same royalty) of 3% applies…." (emphasis in
3  original)).  The plain language of the Agreement flatly contradicts plaintiffs' argument.
4  For example, if it were only the same royalty rate, but not the same royalty for the patent
5  and non-patent rights as plaintiffs contend, Marvel could be required to pay a 6% royalty
6  for the sale of a single product "that would infringe the Patent but for the purchase and
7  sale thereof pursuant to [the] Agreement" and a "Web Blaster product that was the subject
8  of the Action and to which the Judgment refers."

9  In the prior litigation between the parties, the Court held that the "Spider-Man Web
10 Blaster, Item 47630" did not infringe the Kimble patent because there was nothing
11 equivalent to the "glove element" or the "holder element."  (September 4 SOF ¶ 4).[2]
12 Were Marvel to make a modified version of the "Spider-Man Web Blaster, Item 47630"
13 product that had these two elements, it could be covered by the claims of the Kimble
14 patent.  Under plaintiffs' theory that the 3% is the same royalty rate, but not the same
15 royalty, Marvel could be required to pay a 3 % royalty for the patent-rights and an
16 additional 3% royalty for the non-patent rights.[3]  This outcome is facially inconsistent
17 with the Agreement, which plainly does not require a royalty payment of more than 3%
18 for any given product and concomitantly undermines plaintiffs' assertion that the 3% is
19 not the same royalty.

20       **B.     There is no distinction between the patent
21              and non-patent rights in the royalty provision.**

22 It is an undisputed fact that Marvel has never differentiated among toys that Marvel
23 believed "would infringe the Patent but for the purchase and sale thereof pursuant to this
24 Agreement" and payments for "sales of the Web Blaster product that was the subject of

---

[2] The parties agreed in the prior lawsuit that the "glove element" is "generally a cover for the hand."  (September 4 SOF ¶ 5).  The Court construed the "holder element" as "a device for holding the valve means for actuation by pressure exerted by the player's fingers curled over it."  (September 4 SOF ¶ 6).
[3] This statement is a hypothetical to demonstrate the fallacy of plaintiffs' argument. Marvel is not aware of anyone who now makes and sells or intends to make and sell a "Spider-Man Web Blaster, Item 47630."

the Action and to which the Judgment refers." (July 15 SOF ¶ 28; August 17 SOF ¶ 3). It is also undisputed that Marvel's "understanding is that [it has] an obligation of 3 percent of some value associated with a Silly String Shooting element that allows a child or a buyer of the product to role play as though they're Spiderman." (July 15 SOF ¶ 27; August 17 SOF ¶ 3). Marvel has never undertaken to determine whether each individual Web Blaster product that has been sold was a product "that would infringe the Patent" or a "Web Blaster product that was the subject of the Action and to which the judgment refers."

It is also an undisputed fact that plaintiffs flip-flopped, reversing their position as to whether Marvel or Hasbro's Web Blasters infringe the Kimble patent. (July 15 SOF ¶¶ 20-25; August 17 SOF ¶ 1). Plaintiffs' suggestion that Marvel "attempts to raise an issue of fact regarding whether the products in question actually infringe the '856 Patent" is a transparent attempt to have this Court overlook the fact that plaintiffs cannot make up their minds whether Web Blaster products infringe the Kimble patent or not. Marvel is not attempting to create any type of issue of fact as to whether Web Blasters infringe the Kimble patent. Instead, Marvel is demonstrating to this Court that plaintiffs have consistently taken the position that Marvel was making payments and obligated to make payments because the Web Blaster products infringed the Kimble patent, and now are reversing course and claiming that no Web Blaster has ever infringed the Kimble patent because they now believe (albeit incorrectly) that it somehow helps their position. (July 15 SOF ¶¶ 20-25; August 17 SOF ¶ 1). This further demonstrates that royalties for the patent rights and non-patent rights are inseparable because neither plaintiffs nor Marvel have ever attempted to make any distinction between royalties for the patent rights and the non-patent rights prior to this litigation.

**C.     The *Baladevon* case relied on by plaintiffs is inapplicable.**

Plaintiffs rely heavily on *Baladevon, Inc. v. Abbott Labs, Inc.*, 871 F. Supp. 89, 94-96 (D. Mass. 1994) for the proposition that "[w]here a licensing agreement fails to

distinguish between patent and non-patent rights in royalty payments, and a patent is invalidated, *Lear* precludes enforcement of the contract according to its terms but does not preclude compensation for the non-patent rights." (*See* Doc. No. 63 at 7 (quoting *Baladevon*, 871 F. Supp. at 94)). This is a red herring that does not apply here. The agreement at issue in *Baladevon* had a definite end date and was not intended to extend beyond the expiration of a patent. The royalty payments for the patent rights stopped because the parties agreed that the patent was invalid based on prior art that was discovered and compensation for the non-patent rights was awarded based on the intent of the parties. *Baladevon*, 871 F. Supp. at 99. Furthermore, a patent being invalidated prior to its natural expiration is materially different than the natural expiration of a patent. If a written agreement projects royalty payments past the natural expiration of a patent, the agreement is unlawful *per se* under *Brulotte* due to patent misuse. However, when a patent is found to be invalid, as was the case in *Baladevon*, there may not have been any patent misuse because the parties likely thought the patent was valid when they entered into the agreement, precluding any patent misuse so long as royalties do not extend beyond the natural expiration of the patent as was the case in *Baladevon*. Accordingly, *Baladevon* is inapposite.

## III. <u>CONCLUSION</u>

Marvel's royalty payment obligations to plaintiffs should not extend past the May 25, 2010 expiration date of the Kimble patent. The facts in the present case are almost identical to those in the Ninth Circuit opinion in *Zila, Inc. v. Tinnell*[4] and *Pitney Bowes v. Mestre*, where the courts adopted the *Brulotte* rule forbidding royalty payments to extend past the date of the underlying patent's expiration date. *Zila*, 502 F.3d at 1026; *Pitney Bowes*, 701 F.2d at 1373. Despite plaintiffs' attempt to reinterpret it for purposes of extending Marvel's royalty payment obligations, the Agreement in this case is just like the "hybrid" agreements discussed in *Brulotte* and its progeny.

---

[4] *Zila, Inc. v. Tinnell*, 502 F.3d 1014 (9th Cir. 2007).

1  For all of the foregoing reasons Marvel respectfully requests that this Court grant its motion for summary judgment and issue an order declaring: (1) that the September 21, 2001 Agreement between Marvel and plaintiffs is unenforceable insofar as it purports to require Marvel to continue to pay royalties pursuant to the September 21, 2001 Agreement after the expiration of U.S. Patent No. 5,072,856; and (2) that Marvel has no royalty obligations to plaintiffs under the September 21, 2001 Agreement on account of sales of products after May 25, 2010.

DATED this 4th Day of September, 2009.

          PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: /s/ David Fleischer
    David Fleischer (*pro hac vice*)
    75 East 55th Street
    New York, NY 10022

    SNELL & WILMER L.L.P.
    Andrew M. Jacobs
    Joseph A. Kroeger
    One South Church Avenue
    Suite 1500
    Tucson, AZ 85701-1630

    Attorneys for Defendant Marvel Entertainment, Inc.

# **CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2009, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

>Robert Grabb
>rgrabb@aol.com
>KimbleGrabb P.L.L.C.
>7411 E. Tanque Verde Rd.
>Tucson, Arizona 85715
>(520) 326-2500

>      /s/ David Fleischer
>          David Fleischer