**KimbleGrabb, P.L.L.C.**
7411 E. Tanque Verde Rd.
Tucson, Arizona  85715
Ph: 520.326.2500
KimbleLaw@aol.com

Attorneys / Plaintiffs / Counter Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STEPHEN KIMBLE, an individual, and ROBERT GRABB, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>MARVEL ENTERPRISES, INC.,<br><br>Defendant. | Case No. CIV 08-372-TUC-DCB<br><br>**OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION WITH REGARD TO PLAINTIFFS' AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT ON COUNTERCLAIM 1(a)**<br><br>**(Oral Argument Requested)** |

Pursuant to F.R.C.P. 72(b)(2), Plaintiffs respectfully object to that portion of the Magistrate's Report and Recommendation addressing Defendant's First Counterclaim. All parties agree that the question is one of law, whether Marvel owes royalties for non-infringing toys under the terms of the Settlement Agreement (Agreement) after the Kimble patent expires.

Magistrate Ferraro found that the Agreement transferred only patent rights and as such was unenforceable after the expiration of the patent.  The Magistrate recognized that despite his finding, both parties believed that the Agreement transferred patented **and** non patented rights.  The Magistrate held that even if non

- 1 -

patented rights were transferred, under a hybrid agreement *Broulette* again prohibited payment beyond the expiration of the patent. It is respectfully submitted that these findings are erroneous and unsupported by the record.

### Facts in a Nutshell

Kimble invented and patented a web shooting toy.

Kimble met with Marvel and pitched the toy. They said that if they liked it they would pay him a reasonable royalty for it.

Marvel made the toy but refused to pay Kimble.

Kimble filed suit alleging Marvel:
    A. Infringed his patent and,
    B. Breached its promise to pay if they used the idea.

A Federal District Court Judge held that Marvel did not infringe Kimble's patent.

A Federal jury found that Marvel did breach its promise to pay Kimble if it used the idea. It awarded Kimble 3.5% of net product sales.

The parties appealed and thereafter settled the case. The terms of the settlement are set forth in a settlement agreement (Agreement) that is the subject of this litigation. Briefly, in exchange for dismissing the lawsuit and vacating the judgment against it, Marvel purchased both the patent as well as the toy that was the subject of the breach of contract claim and to pay 3% of net product sales of those toys. In the almost ten years that it has been making the Web Blaster, Marvel has never used the patent, but instead has only made versions of the toy for which a jury found it had breached its promise to pay.

Now that the patent approaches its expiration, Marvel argues that since the Agreement includes the purchase of a patent, its obligation to pay, for both patented and unpatented toys ends. In support of this they cite *Broulette* and *Zilla*.

**Law**

**Brulotte v. Thys Co., 379 U.S. 29 (1965) and**
*Zila v. Tinnell*, **502 F.3d 1014 (9th Cir. 2007)**

The Magistrate correctly noted that *Brulotte* and *Zilla* are two of the seminal cases. A careful reading of *Broulotte* shows that it was never intended to impose a limit on the length of an inventor's contract. Rather, it was meant to be a restriction on the length of the monopoly created by a patent. The harm that *Brulotte,* sought to prevent was extension of the monopoly power of a patent beyond the life of the patent, not the length of the payment schedule.

In *Brulotte*, through a series of contractual restrictions, the patent holder was not only able to obtain royalty payments beyond the life of the patent, it was able to effectively extend the monopoly of its patented machines beyond the life of the patent. The Supreme Court noted that "those restrictions rather than the royalty alone in the post expiration period was a telltale sign that the licensor was using the licenses to project its monopoly beyond the patent period." (379 U.S. at 32)

Under those circumstances, the *Brulotte* Court held that federal patent law applied and an agreement that worked to extended a patent's monopoly beyond the term of the patent was unenforceable. *Brulotte* explicitly held that it was because of the post-patent-expiration contractual restrictions **other** than royalties that the company could not collect royalties after the patents expired.

The *Zilla* case followed, and concerned the invention of a medication. The inventor patented the ointment and sold the patent to Zilla. The payment price was 5% of the royalties in perpetuity. Once the patents expired, Zilla refused to make any further payments. *Zilla* cited *Brulotte* and argued that the payments ended when the

patent expired.  The Court of Appeals carefully examined *Brulotte* and disagreed.  It wrote:

> *Brulotte* indicates that under some circumstances patent owners cannot exact royalties for use of patented devices beyond the duration of their patent.  The doctrine appears straightforward enough, but its application runs counter to the usual task in a contract case – to interpret the terms agreed to by the parties.  That is, *Brulotte* renders unenforceable some aspects of an otherwise valid contract.  And it does so for a reason that many courts and commentators have found economically unconvincing, namely, that 'the free market visualized for the post-expiration period would be subject to monopoly influences' if a 'royalty agreement [was allowed to project] beyond the expiration date of the patent.' … So, except as required by *Brulotte* and its progeny, we shall endeavor to give effect to the intent of the parties and the bargain that they struck.  (P.1020)

The *Zilla* court then discussed *Brulotte's* progeny including Aronson v. Quick Point Pencil Co., 440 U.S. 257 (1979).  The Aronson case concerned the invention of a keyholder.  The inventor applied for a patent and negotiated a contract with Quick Point Pencil Co.  The inventor was to receive 5% of the royalties in perpetuity if a patent was issued and 2 1/2% if it was not.  No patent was issued and after 14 years, Quick Point refused to make any further payments.  The Supreme Court held that the contract provided for payments in perpetuity and the contract was enforceable.

The *Zilla* court recognized several rules from Aronson:  First, a contract that provides for royalties in perpetuity either when a patent expires or when it fails to issue is valid if it provides a discount from the alternative, patent-protected rate.  In addition, the court noted that if *Brulotte* applies, it only applies to that portion of a contract that demands royalty payments for patented products after the patent has expired.  It has no effect on other portions of the contract.  With these principles in mind that we turn to the Magistrates Report and Recommendations.

**Enforcement of the Agreement does not extend the Patent Monopoly**

In this case, enforcement of the Agreement does **not** extend any monopoly power beyond the term of the patent. Marvel has not argued, and the Magistrate has not found that the Agreement extends any monopoly. After the expiration of the patent, anyone can manufacture the toy that is the subject of the Kimble patent. In fact, Marvel has admitted that though it has been making the Web Blaster for almost ten years it has never used the patent. It is difficult to understand how enforcing the Agreement beyond the length of the patent would extend any monopoly power and run afoul of *Brulotte*.

**The Agreement provides for Different Compensation  
Before and After the Patent Expires.**

The Magistrate found that the Agreement created "no distinction ... for royalty payments for infringing versus non-infringing toys" (Report, p. 9, ll. 17-19) apparently because the same royalty of 3% applies to either. However, the distinction is in the very language used in the Agreement. A toy either infringes or it does not. As the court noted in *Portney v. Ciba Vision Corporation* [Case number SACV 07-0854 AG (MLGx), C.D.Cal. 6-17-2008], "a device cannot simultaneously be 'covered' and 'not covered' by Patent Rights." *Id., at 6.* That is, the same Web Blaster toy cannot both infringe and not infringe. As also pointed out by the court in the same sentence, the two conditions are mutually exclusive.

The distinction, in the Agreement at issue is not in the **rate** of pay, but in the toys to which that rate applies.

The Agreement at issue, as with the Aronson agreement does provide a different compensation scheme before and after the patent expires. The Agreement requires Marvel to pay 3% of net product sales for two categories of toys:

A.) products that would infringe the patent but for Marvel's purchase and

B.) the Web Blaster product that was the subject of the Action.

Before the patent expires, Marvel is obligated to pay 3% for toys in both categories A.) and B.)  After expiration of the patent, Marvel is no longer obligated to issue payment for toys in category A.). Marvel is only required to make payments for toys in category B.).

A toy either infringes or it does not, it cannot do both. The fact that the same rate is applied is irrelevant because payment of the same royalty for a non-infringing toy before and after a patent expires is not contrary to the rule of *Brulotte*, nor *Zila*, nor any other case dealing with this issue. In fact, no case stands for the proposition that parties cannot agree to a product royalty that continues after the expiration of a patent that the product does not infringe. That is clearly within the scope of what parties can negotiate, as underscored by the *Zila* court (see Plaintiffs' Response to Defendant's Motion for Summary Judgment, p. 3) as well as the court in *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257 (1979), which held that, absent an issued patent, federal patent law will not preempt state contract law. *Id.* at 265.

. In fact, as the *Brulotte* court made clear in dicta, "[t]he sale or lease of *unpatented machines* on long-term payments based on a deferred purchase price or on use would present wholly different considerations. Those arrangements seldom

rise to the level of a federal question." This is exactly the situation we have before this Court.

## Hybrid Agreement

A Hybrid Agreement involves the payment of a **single** royalty for a product that incorporates both patent rights and non-patent rights, such as trade secrets and trademarks in a single product. The Defendant managed successfully to confuse the issue before the Court by arguing that the Agreement is a "hybrid" agreement and therefore subject to the *Brulotte* prohibition against projecting a patent monopoly beyond the patent expiration. In fact, no such result flows from the Agreement because only payments for non-patented toys continue after the expiration of the Kimble patent.

The *Pitney Bowes*, *Boggild* and *Meehan* cases relied on by the Magistrate all deal with royalties paid for products that incorporate both patent and non-patent rights. That is not the case here. The Agreement at issue does not involve a single royalty, but two separate royalty payments of 3% for **either** infringing **or** non-infringing toys. The fact that the same royalty rate applies to both does not change the clear separation of infringing from non-infringing toys. Nor could the Agreement be reasonably construed to involve a toy that both infringes **and** does not infringe because a patent either is or is not infringed. It cannot be both. The Agreement is clearly worded to cover toys that infringe the Kimble patent **as well as** toys that do not as separate and distinct products.

Most on point, irrespective of the label used to characterize the Agreement, such a finding makes no sense under *Brulotte* because the Agreement involves no

projection of the monopoly covered by the Agreement beyond the expiration of the Kimble patent (a post-patent projection of the monopoly being the essence of the *Brulotte* prohibition). Under the Agreement at issue, there is no royalty due beyond the expiration of the Kimble patent for a toy that infringes that patent. After the expiration of the Kimble patent, the Agreement provides for a royalty only for non-infringing toys, which are obviously and by definition separate and distinct from infringing toys.

The Magistrates Report and Recommendation suggests that he believes that a particular version of the Web Blaster can indeed fall under both prongs of the royalty provision in the Agreement; that it incorporates some of the patented features with some features not covered by the patent (but that were the subject of the Action between the parties), so intermingled as to be indistinguishable. But that is not the case: any particular version of the Web Blaster, whatever its features, either infringes the Kimble patent or it does not. It cannot do both. If it infringes, the Agreement provides for a 3% royalty payment under the patent, which all parties agree will terminate at the end of the patent term. If it does not infringe and the toy is one covered by the original Action between the parties, then the Agreement provides for a 3% royalty payment that has nothing to do with the patent and therefore should continue so long as the toy is sold, as clearly permitted by *Brulotte* and *Zila*.

**Entire Contract not Invalidated**

Finally, as *Zilla* made clear, *Brulotte* only renders invalid that portion of a contract that demands royalty payments for patented products after the patent has expired. It has no effect on other portions of the contract including portions that

require payment for non patented products.  If *Brulotte* applies to the Agreement at issue, it only applies to that provision that requires Marvel to pay for patented items after the expiration of the patent.  *Brulotte* only voids Marvel's obligation to pay for infringing toys.  It does not cancel Marvel's obligations to pay for non infringing toys.

## Conclusion

The Agreement at issue does not contemplate extend any monopoly beyond the length of the patent.  Nor does it require royalty payments for patented devices past the patent's expiration date.  That obligation to pay for patented toys ends when the Kimble patent expires.  Marvel's obligation to pay for unpatented toys that were the subject of the litigation continues past the patent expiration date.  Accordingly, in accordance with the holdings of *Zila* and *Brulotte,* Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment.

RESPECTFULLY SUBMITTED  this 16th day of December, 2009.

**KimbleGrabb, PLLC**

by  s/Robert Grabb

Robert Grabb, Esq.
Attorneys / Plaintiffs / Counter Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Andrew Jacobs

Snell & Wilmer, LLP

ajacobs@swlaw.com


Joe Kroeger

Snell & Wilmer, LLP

jkroeger@swlaw.com


David Fleischer

Paul, Hastings, Hanofsky & Walker LLP

davidfleischer@paulhastings.com


s/Robert Grabb