David Fleischer (*pro hac vice*)
Jason T. Christiansen (*pro hac vice*)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, NY 10022
Telephone: (212) 318-6000
davidfleischer@paulhastings.com

Andrew M. Jacobs (AZ Bar. No. 021146)
Joseph A. Kroeger (AZ Bar. No. 026036)
SNELL & WILMER L.L.P.
One South Church Avenue
Suite 1500
Tucson, Arizona 85701-1630
Telephone: (520) 882-1207
ajacobs@swlaw.com
jkroeger@swlaw.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STEPHEN KIMBLE, an individual, and ROBERT GRABB, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>MARVEL ENTERPRISES, INC.,<br><br>Defendant. | CASE NO. CV 08-372-TUC-DCB(DTF)<br><br>**DEFENDANT'S OBJECTIONS TO THE DECEMBER 2, 2009 REPORT AND RECOMMENDATION (DKT. 77)** |

Defendant Marvel Entertainment, Inc. ("Marvel") hereby objects to two aspects of the December 2, 2009 report and recommendation (Dkt. 77). First, Marvel objects to the Court's ruling in section III.D regarding whether, as a matter of law, Marvel owes royalties under the Agreement for Hasbro's "net product sales." Second, Marvel objects to the Court's ruling in section III.C regarding whether, as a matter of law, "net product sales" is defined as 93% of gross product sales.

## I. MARVEL'S OBJECTIONS TO SECTION III.D OF THE REPORT AND RECOMMENDATION

Marvel objects to the ruling in section III.D of the report and recommendation for the reasons stated in defendant's opposition to plaintiffs' motions for summary judgment section IV.C.1 and accompanying statement of facts as well as for the reasons discussed below.  (Dkts. 59 at p. 18 and 60). The report and recommendation states that "under the plain language of the Agreement, Marvel owes Plaintiffs a 3% royalty for anyone's product sales covered by the Agreement."  (Dkt. 77 at 14:10-12.) This finding appears to substantially be based on the Court's incorrect conclusion that

> Contrary to Marvel's contention, this would not obligate [Marvel] to pay for sales by an unrelated third-party. A third-party with no relationship to Marvel could not legally manufacture a toy within either of these categories [in paragraph 3.b of the Agreement] because Marvel owns the patent and it owns the right to Spider-Man, and the Web Blaster is a Spider-Man toy. Thus, Marvel has completely control over the sale of any toys within those two categories.

(Dkt. 77 at 13:8-12.)

Marvel objects to the above findings because they misapprehend the facts and overstate Marvel's rights as an intellectual property holder.  It is correct that Marvel owns the Kimble patent as well as copyrights and trademarks related to Spider-Man. However, Marvel does not use and has never used the Kimble patent.  Therefore, so long as the third party does not call its item the "Web Blaster" or put a picture of Spider-Man on the package, those rights would not prevent a third party from manufacturing a toy covered by the Agreement.  Marvel's intellectual property rights would not prevent someone from infringing upon those rights initially, but would only entitle Marvel to an injunction if Marvel could demonstrate irreparable harm as well as monetary damages. Either of these remedies would require that Marvel successfully prosecute an intellectual property infringement suit which could take years and cost Marvel millions of dollars – significantly more than the total damages claimed by either party in this case.

For example, a third-party such as Mattel could make a Web Blaster product that was functionally identical to the "Spider-Man Web Blaster, Item 47630" that was subject to the prior action between Marvel and Kimble, but that did not infringe the Kimble patent or any of Marvel's Spider-Man intellectual property. As discussed below, plaintiffs themselves have conceded that the Agreement would not require Marvel to pay royalties on such sales. In this situation, Marvel would have no remedy against such a third-party because the product would not infringe the Kimble patent and would not infringe any of Marvel's Spider-Man intellectual property.

Even if a third-party such as Mattel were to make a Web Blaster toy that infringed Marvel's intellectual property rights (either the Kimble patent or Marvel's rights to the Spider-Man intellectual property), then Marvel's only remedy would be to bring a lawsuit to recover damages from the third-party and/or obtain an injunction. Even if Marvel were successful in such a lawsuit and were able to recover infringement damages, the damages might not be adequate to cover the payments that would be required under the Court's interpretation of the Agreement. Holding Marvel responsible to pay royalties on product sales by any third-party could leave Marvel with the Hobson's choice of either prosecuting an intellectual property action costing Marvel more than the royalties it would have to pay plaintiffs or paying plaintiffs without any compensation from a third-party.

More importantly, the report and recommendation appears to overlook the fact that plaintiffs admitted that if a third-party such as Mattel were to independently come out with a toy that infringed the Kimble patent, Marvel would not be obligated to pay Kimble a royalty on Mattel's sales of that product. See Dkt. 67-1 at p. 17 ¶ 20 (agreeing to Dkt. 60 at p. 20 ¶ 20). Accordingly, the parties agree that Marvel would not be obligated to pay royalties for the sales by a third-party's sales of products covered by the Agreement if that company had no relationship with Marvel. Given that the agreement between Hasbro does not license any of the rights covered by the Agreement, as thoroughly explained in Marvel's opposition to plaintiffs' motions for summary judgment and accompanying statement of facts (Dkt. 59 at pp. 9-14 and 18 and Dkt. 60), Marvel's

1 relationship with Hasbro should not change the result.

2 Under the report and recommendation, the Court is effectively reading into
3 the Agreement a duty to sue potential infringers by requiring Marvel to make payments
4 for any third party's sales of a product that would be covered by the Agreement.  The
5 parties could have put such a duty to sue provision in the Agreement, as this is a
6 frequently discussed term in any royalty-bearing transfer of patent rights such as a patent
7 license.  For example, Marvel's license agreement with Hasbro specifically made explicit
8 the implicit fact that there is no duty to sue potential infringers of intellectual property
9 stating "[n]othing herein shall be construed as imposing any obligation upon Licensor or
10 Licensee to take action against any infringer."  (Dkt. 50-7 and 73 at MVL0002240).  The
11 Agreement, however, is silent on this subject and it would be improper for the Court to
12 rewrite the Agreement by imposing an affirmative duty to enforce the Kimble patent –
13 especially in summary judgment proceedings.  Under the Court's report and
14 recommendation, Marvel is required to pay royalties on any product, made by anyone,
15 that falls within one of the two categories listed in the Agreement – regardless of whether
16 Marvel actually receives any compensation for those sales.  Requiring Marvel to pay
17 royalties based on sales for which it receives no compensation effectively rewrites the
18 Agreement, is not supported by the plain language of the Agreement, and is not a
19 plausible reading of the Agreement.

20 Under the ruling in the report and recommendation, there are many
21 scenarios – of which only a couple are discussed herein – where Marvel would be
22 required to pay royalties to plaintiffs based on a third-party's sales even though Marvel
23 would have no possibility of receiving any payment from the third-party or would likely
24 receive less than the amount it was required to pay plaintiffs.  Such a result is contrary to
25 the plain language of the Agreement and both parties agree that such a result in not what
26 the parties intended.  Accordingly, Marvel respectfully objects to Section III.D of the
27 report and recommendation.

28

-4-

## II. MARVEL'S OBJECTIONS TO SECTION III.C OF THE REPORT AND RECOMMENDATION

Marvel objects to the ruling in section III.C of the report and recommendation for the reasons stated in defendant's opposition to plaintiffs' motions for summary judgment section IV.C.4. (Dkts. 59 at p. 23-24 and 60).

## III. CONCLUSION

For all the foregoing reasons and the reasons stated in Marvel's opposition to plaintiffs motions for summary judgment and statement of facts (Dkts. 59 and 60), Marvel respectfully objects to sections III.C and III.D of the report and recommendation.

DATED this 16th day of December, 2009.

        PAUL, HASTINGS, JANOFSKY
        & WALKER LLP

        By: /s/ David Fleischer
            David Fleischer

        SNELL & WILMER L.L.P,
        Andrew Jacobs
        Joseph A. Kroeger

        Attorneys for Defendant

# CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2009, I caused the attached document to be electronically transmitted to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

> Robert Grabb
> rgrabb@aol.com
> KimbleGrabb P.L.L.C.
> 7411 E. Tanque Verde Rd.
> Tucson, Arizona 85715
> (520) 326-2500

/s/   Jason T. Christiansen
Jason T. Christiansen