David Fleischer (*pro hac vice*)
Jason T. Christiansen (*pro hac vice*)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, NY 10022
Telephone:  (212) 318-6000
davidfleischer@paulhastings.com
jasonchristiansen@paulhastings.com

Andrew M. Jacobs (AZ Bar. No. 021146)
Joseph A. Kroeger (AZ Bar. No. 026036)
SNELL & WILMER L.L.P.
One South Church Avenue
Suite 1500
Tucson, Arizona  85701-1630
Telephone:  (520) 882-1207
ajacobs@swlaw.com
jkroeger@swlaw.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STEPHEN KIMBLE, an individual, and ROBERT GRABB, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>MARVEL ENTERPRISES, INC.,<br><br>Defendant. | CASE NO. CV 08-372-TUC-DCB(DTF)<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING THE PATENT EXPIRATION ISSUE RAISED BY DEFENDANT'S FIRST COUNTERCLAIM** |

## I.    INTRODUCTION

Defendant Marvel Entertainment, Inc. ("Marvel") hereby responds to plaintiffs' objections to Magistrate Judge Ferraro's report and recommendation addressed to the motions for summary judgment by plaintiffs and Marvel with respect to Marvel's first counterclaim.  Plaintiffs' objections merely reargue the points urged in their motion

papers submitted to Magistrate Judge Ferraro and at oral argument on this issue and do

not warrant reconsideration by this Court.  Magistrate Judge Ferraro carefully reviewed

two motions for summary judgment on this issue, the Agreement, and the applicable law

to render the correct decision granting summary judgment to Marvel on the patent

expiration issues raised in its first counterclaim and, concomitantly, denying plaintiffs'

motion for summary judgment on the same issue.  In fact, Magistrate Judge Ferraro

carefully considered the arguments made by plaintiffs and rehashed in their objections and

articulated two separate reasons why Marvel will no longer required to pay royalties to

plaintiffs after the Kimble patent expires, stating:

> Accordingly, the Court finds the Agreement is governed by *Brulotte* and the
> royalty provision is unenforceable after expiration of the patent.  This is true
> if the Agreement is interpreted as transferring only a patent right, in which
> case the royalty provision is clearly based on a patent, or if the Agreement is
> a hybrid and transfers patent and non-patent rights for royalties that are
> inseparable between the two rights.

(Dkt. 77 at 10).  Magistrate Judge Ferraro's determination of the parties' summary

judgment motions on the patent expiration issue is well-reasoned and should be adopted in

all respects by the Court.

## II.    ARGUMENT

Although plaintiffs' arguments have already been addressed in prior

briefing, below Marvel briefly reiterates why the royalty provision in the Agreement does

not separate patent rights from non-patent rights as plaintiffs continue to argue and

corrects at least one important false and misleading statement plaintiffs make in their

objections.

### A.    The Agreement creates no distinction between patent-based rights and non-patent rights.

Paragraph 3 of the Agreement is the starting point and ending point for

determining whether the Agreement provides any reasonable means to separate patent

1    rights from non-patent rights.  That section of the Agreement states:

2

3            3.  Marvel agrees to purchase from the Patent Holders and the Patent
             Holders agree to sell to Marvel the Patent which will be evidenced by an
4            instrument of assignment in the form of exhibit C hereto. The purchase price
             for the Patent shall be payable to the Patent Holders as follows:
5

6            a.  $516,214.62 upon execution and delivery of this Agreement; and

7            b.  3% of "net product sales" (as such term is used in the Judgment)
             excluding refill royalties made after December 31, 2000. For purposes of
8            this paragraph 3.b, "net product sales" shall be deemed to include product
             sales that would infringe the Patent but for the purchase and sale thereof
9            pursuant to this Agreement as well as sales of the Web Blaster product that
             was the subject of the Action and to which the Judgment refers.
10

11   (Dkt. 77 at 4 (quoting paragraph 3 of the Agreement)).

12            Plaintiffs attempt to manufacture an artificial distinction between patent

13   rights and non-patent rights based on this provision because they know this is the only

14   way to avoid the holdings of *Brulotte*, *Zila*, and their progeny as discussed in Magistrate

15   Judge Ferraro's Report and Recommendation.[1]  (Dkt. 77 at 5-10).  No such distinction

16   exists.  As Magistrate Judge Ferraro determined, "[t]he inseparability of the rights

17   transferred is illustrated by the history of the Agreement."  (Dkt. 77 at 9).  The provision

18   above does not call for two separate royalties – one on items covered by the patent and

19   one on items that were subject of the prior action.  The Agreement calls for a single 3%

20   royalty on "net product sales."  For the sake of clarity, the Agreement then specifies what

21   is included in "net product sales" – items covered by the patent as well as the Web Blaster

22   product that was subject to the prior action.  This provision does not require anyone to

23   make a determination as to whether the product is covered by the patent or not because the

24   parties disagreed on this issue when the Agreement was signed.

25   _____

26   [1] *Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1965) and *Zila, Inc. v. Tinnell*, 502 F.3d 1014 (9th
27   Cir. 2007).

28

It is important to understand this provision of the Agreement in context which makes it clear that the parties did not agree on whether the product that was subject to the prior action actually infringed the Kimble patent.  The Agreement was made to settle litigation while plaintiffs' patent infringement claim was being appealed (and presumably while they still believed the "Spider-Man Web Blaster, Item 47630" infringed the Kimble patent unless they knowingly filed a baseless appeal).[2]  (Dkt. 77 at 6).  At the same time, Marvel had appealed the jury's award of royalties.  *Id*.  This is important because it demonstrates that the parties were not in agreement as to whether the "Spider-Man Web Blaster, Item 47630" infringed the Kimble patent at the time they entered into the Agreement.  The language used encompasses both infringing products and the product that was subject to the prior action.  Plaintiffs' motivation was to assure that regardless of whether the product at issue infringed the Kimble patent they obtained a 3% royalty on Marvel's net product sales of that item.  Consequently, the Agreement makes no distinction between the royalty paid on sales of infringing products and non-infringing products.  The Agreement provides for a single 3% royalty.

   **B.**   **A web blaster product could both infringe the Kimble patent and be a "Web Blaster product that was the subject of the Action and to which the Judgment refers."**

Contrary to plaintiffs' assertions, if the "Web Blaster product that was the subject of the Action and to which the Judgment refers" is construed to include modified versions of the original "Spider-Man Web Blaster, Item 47630" that was subject of the prior action, it is entirely possible that such a product could both infringe the patent and be one of these modified versions at the same time.  The fact that neither Marvel nor Hasbro

---

[2] Furthermore, plaintiff Rob Grabb took the position that all of the Web Blaster products currently on the market infringed the Kimble patent as late as January 9, 2008.  (Dkt. 63-1 at ¶ 1, agreeing to Dkt. 55 at ¶ 20).  Only when plaintiffs attempted to manufacture an artificial distinction between patent and non-patent rights to attempt to avoid *Brulotte*, *Zila*, and their progeny did plaintiffs take the position that the Web Blasters never infringed the patent.  *See* Dkt. 54 at ¶ 6.

has made such a product does not mean that one could not exist.  Were such a product to be made by Marvel today, plaintiffs' strained attempt to create a distinction between "the Web Blaster product that was the subject of the Action and to which the Judgment refers" and products that infringe the Kimble patent, plaintiffs' reading of the Agreement would require Marvel pay a total of 6% royalty for each product – 3% because it fell within the "Web Blaster product that was the subject of the Action and to which the Judgment refers" language and an additional 3% because it infringed the Kimble patent.  Plainly, such a result is not a plausible interpretation of the Agreement.  Accordingly, as Magistrate Judge Ferraro correctly determined, the payments under Section 3 of the Agreement terminate upon the expiration of the Kimble patent.

      C.    ***Aronson* does not control this case.**[3]

      Plaintiffs incorrectly analogize this case to *Aronson*, but  *Aronson* is not similar to this case.  The Agreement at issue in *Aronson* clearly contemplated what would happen if a patent did not issue and provided for a lower royalty.  If the Agreement in this case provided any type of distinction between pre- and post-patent expiration or patent-based and non-patent-based rights, *Aronson* might be relevant or even controlling, but no such distinction exists in the Agreement, rendering *Aronson* irrelevant.  *Aronson* instructs intellectual property owners and their business partners how to draft an Agreement to require royalty payments after a patent expires or in the case a patent is never granted.  This Court cannot retroactively rewrite the Agreement to comply with *Aronson's* prescriptions.

      D.    **Marvel has never taken the position that the entire Agreement is invalidated once the Kimble patent expires.**

      Plaintiffs make the argument that the entire Agreement is not invalidated

---

[3] *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 259 (1979).

under *Brulotte* if there is an offending payment provision that extends the patent monopoly.  Marvel agrees with this general statement.  As previously stated and found by Magistrate Judge Ferraro, the Agreement provides no distinction between patent rights and non-patent rights.  Accordingly, the entire Agreement may not be invalidated under *Brulotte*, but all payment provisions are invalidated once the patent expires.  Because no payments will be provided to plaintiffs after the Kimble patent expires, the remainder of the Agreement serves no purpose as the remainder of the Agreement is concerned only with making sure plaintiffs receive the payments to which they may be entitled under the Agreement's legally enforceable terms.

**E.      Contrary to plaintiffs' assertions and as Magistrate Judge Ferraro recognized, *Zila* followed *Brulotte*.**

Plaintiffs attempt to mislead this Court by stating that *Zila* did not follow the holding in *Brulotte*.  Specifically, plaintiffs state that "*Zila* cited *Brulotte* and argued that the payments ended when the patent expired.  The Court of Appeals carefully examined *Brulotte* and disagreed."  (Dkt. 80 at 3-4).  Plaintiffs' statement is patently false as recognized by Magistrate Judge Ferraro who stated:

> Contrary to Plaintiffs' argument, the Ninth Circuit was unable to enforce the parties' intent because it found that "*Brulotte* preempts state law with regard to a contract for payment of royalties on the sale of an invention that may be patented, if a patent indeed issues."  *Id*. at 1020, 1022.  Thus, *Zila* illustrates that *Brulotte* may override the parties' intent regarding the length of a royalty provision.

(Dkt. 77 at 7).  It is frivolous for plaintiffs to continue making an argument belied by a simple read of *Zila*, and Magistrate Judge Ferraro concurred.

1

## III.   CONCLUSION

2

3          For all the foregoing reasons and the reasons stated in Marvel's motion for

4   summary judgment briefing and statement of facts (Dkts. 54-56 and 64-66), Marvel

5   respectfully submits that Magistrate Judge Ferraro correctly decided the issues related to

6   both parties' motions for summary judgment on Marvel's first counterclaim.

7   DATED this 30th day of December, 2009.

8
                                        PAUL, HASTINGS, JANOFSKY
9                                       & WALKER LLP

10
                                        By:  /s/ David Fleischer
11                                          David Fleischer

12                                      SNELL & WILMER L.L.P,
                                        Andrew Jacobs
13                                      Joseph A. Kroeger

14                                      Attorneys for Defendant
                                           Marvel Entertainment, Inc.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

3      I hereby certify that on December 30, 2009, I caused the attached document to be

4

electronically transmitted to the Clerk's Office using the ECF System for filing and

5

transmittal of a Notice of Electronic Filing to the following ECF registrant:

6

7

8          Robert Grabb
           rgrabb@aol.com
9          KimbleGrabb P.L.L.C.
           7411 E. Tanque Verde Rd.
10         Tucson, Arizona 85715
           (520) 326-2500
11

12

13

14                          /s/ Jason T. Christiansen
                                Jason T. Christiansen
15

16

17

18

19

20

21

22

23

24

25

26

27

28