# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen Kimble, an individual, and Robert Grabb, an individual,<br><br>    Plaintiffs,<br>v.<br><br>Marvel Enterprises, Inc.,<br><br>    Defendant. | CV 08-372-TUC-DCB<br><br>**ORDER** |

On December 2, 2009, Magistrate Judge Ferraro issued a Report and Recommendation (R&R). (Doc. 77.) He recommends granting Defendant's motion on termination of royalties when the patent expires and Plaintiffs' motion on the definition of "net product sales." He recommends denying Plaintiffs' four other motions. After an independent review of the record, the Court adopts the R&R as the opinion of the Court and grants and denies the motions for summary judgment accordingly.

## STANDARD OF REVIEW

The duties of the district court in connection with a R&R by a Magistrate Judge are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1). Where the parties object to a R&R, "[a] judge of the [district] court shall make a *de novo* determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1); *see Thomas v. Arn,* 474 U.S. 140, 149-50 (1985). When no objection is filed, the district court need not review the R&R *de novo*.

This Court's ruling is a *de novo* determination as to those portions of the R&R to which there are objections. 28 U.S.C. § 636(b)(1)(C); *Wang v. Masaitis,* 416 F.3d 992, 1000 n. 13 (9th Cir. 2005); *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121-22 (9th Cir. 2003) (*en banc*). To the extent that no objection has been made, arguments to the contrary have been waived. *See* 28 U.S.C. § 636(b)(1)(A) (objections are waived if they are not filed within ten days of service of the R&R), *McCall v. Andrus*, 628 F.2d 1185, 1187 (9th Cir. 1980) (failure to object to Magistrate's report waives right to do so on appeal); Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court for N.D. Calif.*, 501 F.2d 196, 206 (9th Cir. 1974) (when no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation)). Accordingly, the Court reviews only the objections raised in the briefs filed in objection to the R&R and reviews *de novo* the arguments urged before the Magistrate Judge that pertain to such objections. All other objections are waived.

## STATEMENT OF THE CASE

In 1997, Plaintiff Kimble[1] sued Toy Biz (now known as Marvel) for patent infringement and breach of contract based on an oral agreement in CV 97-557 TUC RCC. Kimble invented a web shooting toy, patent no. 5,072,856, which expires no later than May 25, 2010. In 1990, he met with Toy Biz to discuss his patent application and related ideas. Toy Biz agreed it would not use the ideas disclosed by Kimble without first negotiating a reasonable royalty payment for their use. Toy Biz subsequently made and sold a toy, "Web Blaster" and refused to pay Kimble any royalty. Kimble sued Toy Biz. The District Court ruled as a matter of law that the Web Blaster did not infringe the Kimble patent, but there were disputed questions of fact as to the verbal agreement between the parties. After a jury trial, the court entered judgment for Kimble finding the Web Blaster was covered by the

---

[1] Plaintiff Grabb was not a party to the 1997 action. He acted as Kimble's attorney during that proceeding and is a signatory on the Agreement and a Plaintiff in this action.

verbal agreement and awarded damages "to be 3.5% of net product sales, past, present and future excluding refill royalties." Both parties appealed. (R&R at 3.)

While the appeal was pending, the parties entered into a settlement agreement (the Agreement). They withdrew their appeals and agreed to vacate the Judgment. The "key provision" of the Agreement, is as follows:

> 3. Marvel agrees to purchase from the Patent Holders and the Patent Holders agree to sell to Marvel the Patent which will be evidenced by an instrument of assignment in the form of exhibit C hereto. The purchase price for the Patent shall be payable to the Patent Holders as follows:
>
> a. $516,214.62 upon execution and delivery of this Agreement; and
>
> b. 3% of "net product sales" (as such term is used in the Judgment) excluding refill royalties made after December 31, 2000. For purposes of this paragraph 3.b, "net product sales" shall be deemed to include product sales that would infringe the Patent but for the purchase and sale thereof pursuant to this Agreement as well as sales of the Web Blaster product that was the subject of the Action and to which the Judgment refers.

*Id.* at 4 (citing doc. 47: Agreement at 4). The Agreement contains no expiration date.

On January 6, 2006, Marvel entered a licensing agreement with an independent company, Hasbro, effective in 2007, giving Hasbro copyright and trademark rights for Marvel characters in certain toy categories, and Hasbro began making versions of the Web Blaster. *Id.* at 4.

Hasbro refused to sign a sublicense to pay Plaintiffs royalties owed under the Agreement. Since 2007, Hasbro has reported quarterly to Marvel the units sold, and Marvel receives royalties from Hasbro amounting to 10% of net sales of the licensed products. Up until May 2008, Marvel paid Plaintiffs 3% of Hasbro's net sales of various Web Blaster products. On May 23, 2008, Marvel informed Plaintiffs they were not entitled to royalties on Extra Value Items and that it had recalculated the 2007 royalties and determined Marvel had overpaid Plaintiffs by $282,700.00 *Id.* at 4-5.

Plaintiff filed for breach of contract in state court. The action was removed to federal court by Defendant, who answered and counterclaimed for overpayment and declaratory judgment as to its obligations under the Agreement.

The matters have been fully briefed. Plaintiffs filed a Motion for Summary Judgment requesting the Court deny Marvel's counterclaim for the overpayment. (Ps' MSJ) (doc. 47). Plaintiffs/Counterdefendants filed a Motion for Partial Summary Judgment on Marvel's counterclaim of overpayment as to royalties owed on "3% of net product sales" for multi-functional toys, which are those that shoot not only the foam web but shoot additional things like darts, missiles, water, etc. (Ps' MPSJ) (doc. 48). Plaintiffs/Counterdefendants filed a Motion for Summary Judgment seeking declaratory judgment that Marvel continues to be responsible for certain obligations beyond the expiration of the patent, May 25, 2010. (Ps' MSJ) (doc. 49). Plaintiffs/Counterdefendants filed a Motion for Summary Judgment on Marvel's counterclaim of overpayment as to royalties owed on "3% of net product sales" for "extra value items" of the Web Blaster. (Ps' MSJ) (doc. 50). Plaintiffs filed a Motion for Partial Summary Judgment regarding the definition of "net product sales." (Ps' MPSJ) (doc. 51). Defendant, Marvel, filed a Motion for Summary Judgment for a declaratory judgment that any obligation to make payments pursuant to the Agreement terminates on the date the Kimble patent underlying the Agreement expires, May 25, 2010. (MSJ) (doc. 54).

The Magistrate Judge addressed the issues raised in these interrelated summary judgment motions in one R&R, as follows: Section B: whether, as a matter of law, Marvel owes royalties under the Agreement after the patent expires; Section C: whether, as a matter of law, "net product sales" is defined in the Agreement; Section D: whether, as a matter of law, Marvel owes royalties under the Agreement for Hasbro's net product sales, and Section E: whether, as a matter of law, Marvel owes royalties for improved Web Blasters and Extra Value Items.

The Magistrate Judge found that as a matter of law, Marvel is not required to pay royalties under the Agreement after the May 25, 2010, expiration of the Kimble patent. He

found there was no genuine issue of material fact regarding the definition of "net product sales" in the Agreement – it means 93% of gross product sales. He found there are genuine issues of material fact in dispute which preclude summary judgment on the issue of sales by Hasbro for improved Web Blasters and Extra Value Items.

On December 16, 2009, the parties filed Objections to the R&R on the question of law: whether Marvel owes royalties after the expiration of the patent under the terms of the Agreement; whether Marvel owes royalties under the Agreement for Hasbro's "net product sales," and whether "net product sales" is defined as 93% of gross product sales.

**PLAINTIFFS/COUNTERDEFENDANTS' OBJECTIONS**

Plaintiffs object to Magistrate Judge Ferraro's finding that the royalty Agreement ends when the patent expires. Plaintiffs argue that the Agreement transferred both patented and non-patented rights and while the royalties for the patented rights end with the patent, they do not end for non-patented rights which cover the Web Blaster.

This Court notes that Plaintiffs' position on whether the Web Blaster infringes on the Kimble patent has changed since the 1997 law suit and settlement. On appeal, Kimble argued that the Web Blaster infringed the patent. Kimble had prevailed on his breach of contract claims related to Defendant's oral agreement to not use the ideas he disclosed without negotiating a reasonable royalty payment, but he lost on summary judgment his patent infringement claim. Defendant appealed the Judgement for Kimble on the breach of contract claim.

The Agreement vacated the Judgment, which had issued in favor of Kimble on the breach of contract claim. The parties agreed for Marvel to purchase the patent at the purchase price of: "$516,214.62 and 3% of "net product sales" (as such term is used in the Judgment) . . . For purposes of this paragraph 3.b, "net product sales" shall be deemed to include product sales that would infringe the Patent but for the purchase and sale thereof pursuant to this Agreement as well as sales of the Web Blaster product that was the subject of the Action and to which the Judgment refers." "Net product sales," as such term was

used in the Judgment referred to the Web Blaster that had been found to not infringe on the Kimble patent. The 3% net product sales was deemed to "include product sales that would infringe the Patent *as well as sales of the Web Blaster product that was the subject of the Action and to which the Judgment refers.*" This language in the Agreement is arguably in keeping with the parties' interpretations of the Agreement "as transferring the patent right and the rights to the toy idea(s) verbally exchanged between Kimble and Toy Biz in 1990." (R&R at 8.)

"Because the parties are in agreement, and the outcome is the same whether the Agreement transferred only patent rights or both patent and non-patent rights, the [Magistrate Judge] also assessed the latter possibility." *Id.* The Magistrate Judge correctly found that the Agreement is a hybrid under the law. Plaintiffs' argument that the Agreement creates separable rights, "patent rights" and "non-patent rights" fails because there is no distinction between the royalties for these two. (R&R at 8-9) (discussing hybrid concept from *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1371-72 (11th Cir. 1983); *Boggild v. Kenner Products*, 776 F.2d 1315, 1319 (6th Cir. 1985)).

Plaintiffs' argument also fails under the seminal case on the issue, *Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964), in which the Court held that "a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful *per se.*" *Id.* at 6. In *Brulotte*, the Court distinguished the situation from ones in which non-patented items are priced based on long-term use or in which different arrangements would apply before and after the expiration of a patent. *Id.* (citing *Brulotte*, 379 U.S. at 31-32). "The Court emphasized that because the terms were the same both before and after expiration of the patent, they were "'unable to conjecture what the bargaining position of the parties might have been and what resultant arrangement might have emerged had the provision for post-expiration royalties been divorced from the patent and nowise subject to its leverage.'" *Id.*, *see also Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 259-262 (1979) (distinguishing a situation with two agreements, one for a 5% royalty for the item in the inventor's pending

1 patent application and the second for a 2 ½% royalty if the patent application was not
2 allowed within five years, because the 2 ½% royalty did not rely on a patent).  As noted by
3 the Magistrate Judge the reduced royalty in *Aronson* was negotiated for the express purpose
4 of compensation in the absence of a patent.  The *Aronson* agreement did not offend the
5 principle emphasized in *Brulotte* that it is unlawful to leverage a patent monopoly beyond its
6 expiration.

This Court has read *Zila, Inc. v. Tinnell*, 502 F.3d 1014 (9th Cir. 2007) and agrees with the Magistrate Judge that even though Plaintiffs rely on this case, it does not support them. *Id.* at 7.  In *Zila*, the Ninth Circuit considered an Agreement containing a royalty provision for "a five percent (5%) royalty on gross sales of [Zila] of the invention" in perpetuity.  *Zila*, 502 F.3d at 1017.  It was uncontested that when the parties entered into the Agreement they did not know whether any patent would issue on the invention, and they did not intend the royalties to relate in any way to patents that might or might not be obtained.  *Id.* Subsequently, however, patents were obtained.  After criticizing *Brulotte* and its progeny, the Ninth Circuit held that for the sake of national uniformity in patent law it would follow the majority view that under *Brulotte* state contract law is preempted "on facts that (1) a patent did *not* issue in [a] case and (2) the underlying agreement provided for a lower royalty if no patent issued than if one did."  *Id.* at 1022.  The court held that since a patent did issue for the *Zila* invention, *Brulotte* controlled and the royalty provision was unenforceable after the last of the patents covering the invention ended.  In *Zila*, the court applied *Brulotte* to a royalty provision covering "the invention," covering both patent and non-patent rights.

Following *Zila*, the Magistrate Judge correctly applied *Brulotte* in this case to find that the royalty provision is unenforceable after the expiration of the Kimble patent.

**DEFENDANT'S OBJECTIONS**

Defendant raises two objections: 1) whether Marvel owes royalties for Hasbro's "net product sales" and 2) whether "net product sales" is defined as 93% of gross product sales. (D's Objection at 1.)

- 7 -

First, Defendant objects to what Plaintiffs correctly point out is dicta in the Magistrate Judge's R&R: "'Marvel owes Plaintiffs a 3% royalty for anyone's product sales covered by the Agreement.'" (D's Objection at 2 (quoting R&R at 14)). Specifically, Defendant objects to the following:

> Contrary to Marvel's contention, this would not obligate [Marvel] to pay for sales by an unrelated third-party. A third-party with no relationship to Marvel could not legally manufacture a toy within either of these categories [in paragraph 3.b of the Agreement] because Marvel owns the patent and it owns the right to Spider-Man, and the Web Blaster is a Spider-Man toy. Thus, Marvel has complete control over the sale of any toys within those two categories.

*Id.* (citing R&R at 13). "Marvel object to the above findings because they misapprehend the facts and overstate Marvel's rights as an intellectual property holder." (D's Objection at 2.)

The issue before the Court has nothing to do with an unrelated third-party. As Defendant recognizes, the "plaintiffs themselves have conceded that the Agreement would not require Marvel to pay royalties on such sales." *Id.* at 3. "Plaintiffs admitted that if a third-party such as Mattel were to independently come out with a toy that infringed the Kimble patent, Marvel would not be obligated to pay Kimble a royalty on Mattel's sales of that product." *Id.* Defendant then argues that because Marvel would not be obligated to pay royalties for a third-party's sales of products covered by the Agreement if the company had no relationship with Marvel, the fact of the licensing relationship between Marvel and Hasbro should not change the result, "given that the [A]greement between Hasbro does not license any of the rights covered by the Agreement." (Objection at 3.)

Whether or not the licensing agreement between Hasbro and Marvel licensed any rights covered by the Marvel-Kimble Agreement is a disputed question of fact to be resolved at trial, and as thoroughly discussed in the R&R the relationship between Hasbro and Marvel does make a difference. "Under the licensing agreement, Marvel receives 10% of Hasbro's net sales for the use of the Spider-Man license and trademark." (R&R at 13.) "Hasbro, which is making the Web Blaster, is making it as Marvel's assignee and paying Marvel for the rights to do so." (Ps' Reply to D's Objection at 3.) In other words, the 3% royalty provision in the Agreement applies, if a jury finds that Hasbro is manufacturing and selling

- 8 -

any product under its licensing agreement with Marvel, covered by the Marvel-Kimble Agreement.

Second, "Marvel objects to the ruling in section III.C of the report and recommendation for the reasons stated in defendant's opposition to plaintiffs' motions for summary judgment section IV.C.4. (dkts. 59 at p. 23-24 and 60.)" (D's Objection at 5.) "In response, Plaintiffs incorporate those relevant portions of their Motion for Summary Judgment." (Ps' Reply at 3.)

Defendant fails to raise a proper objection to the R&R to invoke this Court's *de novo* determination of this portion of the R&R. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn,* 474 U.S. 140, 149-50 (1985) (explaining when no objections are filed, the district court need not review the R&R *de novo*). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues-factual and legal-that are at the heart of the parties' dispute." *Thomas*, 474 U.S. at 147. Precluding review of any issue not contained in an objection, prevents a litigant from "sandbagging" the district judge by failing to object and then appealing. "Absent such a rule, any issue before the magistrate would be a proper subject for appellate review." Without the rule requiring parties to object, the district court would have to review every issue in every case, no matter how thorough the magistrate's analysis. The rule promotes the efficient use of judicial resources. *Id.* These principles require a party to do more than simply object, without identifying and explaining the objection. Defendant has done nothing more than the legal equivalent of filing a notice of some nondescript objection.

Nevertheless, the Court has reviewed *de novo* Subsection III.C of the R&R, wherein the Magistrate Judge found that as a matter of law in the Agreement the definition of "net product sales" means 93% of gross product sales. (R&R at 10.) The Court agrees with the Magistrate Judge's conclusion that the Agreement is ambiguous because "net product sales" is not defined, but only refers to the term as used in the Judgment, and the term was not defined in the Judgement. *Id.*

The Magistrate Judge relied on extrinsic evidence of deposition testimony from the 1997 action and the parties' performance under the Agreement through 2006, during the time it was selling toys. The Magistrate Judge found that the Defendant's arguments were conclusory, and Defendant failed to provide any conflicting evidence or any other definition the parties may have intended at the time they adopted the Agreement. The Defendant's unsupported contentions remain unsupported, and as recommended by the Magistrate Judge, this Court finds that the term "net product sales" means 93% of gross product sales.

## CONCLUSION

As a matter of law, Defendant is not required to pay royalties under the Agreement after the May 25, 2010 expiration of the patent. As a matter of law, the term "net product sales" in the Agreement means 93% of gross product sales. There are genuine issues of material fact precluding summary judgment on all other issues.

After *de novo* review of the issues raised in the parties' Objections, this Court agrees with the findings of fact and conclusions of law made by the Magistrate Judge in his Report and Recommendation for determining the pending motions.

**Accordingly,**

**IT IS ORDERED** that the Report and Recommendation is adopted as the Opinion of the Court.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment (doc. 49) is DENIED; the Defendant's Motion for Summary Judgment (doc. 54) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (doc. 51) is GRANTED.

**IT IS FURTHER ORDERED** that all other summary judgment motions (doc. 47, 48, 50) are DENIED.

**IT IS FURTHER ORDERED** WITHDRAWING THE REFERENCE from Magistrate Judge Ferraro. This matter shall be tried by the Honorable David C. Bury.

**IT IS FURTHER ORDERED** that the parties shall file a Joint Pretrial Order by March 26, 2010. (*See* attached form of Order.) Subsequently, the Court shall set a pretrial conference and the trial date will be set at the pretrial conference.

DATED this 1st day of March, 2010.

David C. Bury
United States District Judge

# FORM OF PRETRIAL ORDER

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |  |
|---|---|---|
| Plaintiff, | ) ) ) ) | |
| v. | ) ) | CV          TUC DCB |
|  | ) ) | **PRETRIAL ORDER** |
| Defendant. | ) ) ) | |

(Although the text of the pretrial order appears in single space, the actual order submitted by the parties must be double spaced and conform in all other respects to the Local Rules.)

The following are pretrial proceedings in this cause pursuant to Rule 16.2 of this Court, and **IT IS ORDERED**:

I. <u>NATURE OF ACTION</u>
This is an action for: (Short concise statement of the case, including the nature of the action and the relief sought.)

II. <u>STATEMENT OF JURISDICTION</u>
Statement of jurisdiction: (state the claims and cite the statutes which give this Court jurisdiction over each claim.)

III. <u>CONTESTED ISSUES OF LAW/FACT</u>

State the ultimate issues of fact and law which must be decided at trial. State only the issues of fact and law necessary and material for a verdict in this case. Each issue must be stated separately and specifically.

IV. <u>LIST OF EXHIBITS</u>
Each party shall list the exhibits it intends to offer at trial.

V. <u>LIST OF WITNESSES</u>
Each party shall list the witnesses it intends to call at trial.

VI. <u>JURY TRIAL or BENCH TRIAL</u>
The parties shall state whether the trial is a jury or bench trial.

<u>For a Jury Trial</u>
At the Pretrial Conference, the Court will direct the parties to file proposed voir dire, objections to exhibits, deposition testimony, stipulated jury instructions, counsel's additional proposed jury instructions, motions in limine, and trial memoranda 20 days prior to trial. Any opposition shall be filed five days thereafter.

<u>For a Bench Trial</u>
At the Pretrial Conference, the Court will direct the parties to file trial briefs, objections to exhibits, motions in limine, and proposed findings of fact and conclusions of law 20 days prior to trial. Any opposition shall be filed five days thereafter.

VII. <u>PROBABLE LENGTH OF TRIAL</u>
Each party shall identify the estimated length of time it will take to present its case.

VIII. <u>CERTIFICATION</u>
The undersigned counsel for each of the parties in this action do hereby approve and certify the form and content of this proposed Joint Pretrial Order.

_____          _____
Attorney for Plaintiff                                    Attorney for Defendant

This Joint Pretrial Order is hereby approved on this ___ day of _____, 2006.

_____
David C. Bury
United States District Judge