WO

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

Stephen Kimble, an individual, and Robert Grabb, an individual,

        Plaintiffs,

v.

Marvel Enterprises, Inc.,

        Defendants.

CV 08-372 TUC DCB

**ORDER**

The Court grants in part and denies in part the Motion for Reconsideration of this Court's Order, issued on September 8, 2010, without calling for a Response from Plaintiff because the changes do not substantively affect the Order. Rules of Practice of the United States District Court for the District of Arizona (Local Rules), Rule 7.2(g) (no motion for reconsideration may be granted unless the Court provides an opportunity for response). Here, the changes made by the Court are for clarification and to correct a clerical error.

Motions to reconsider are appropriate only in rare circumstances to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (1986). A motion for reconsideration should not be used to ask a court "to rethink what the court had already thought through--rightly or wrongly". *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983); *cf., Agric. Research & Tech. Group,* 916 F.2d at 542. Arguments that a court was in error on the issues it considered should be directed to the court of appeals. *See Refrigeration Sales Co. v. Mitchell-Jackson, Inc.,* 605 F. Supp. 6, 7 (N.D. Ill. 1983).

Defendant argues that the Court should reconsider its Order filed on September 8, 2010, which approved and adopted the parties' Proposed Pretrial Order and granted in part the parties' motions to strike as follows: Sections I(B)(1), I(B)(3), second sentence, III(B)(1) and (2), as revised, III(B)(6), III(C)(2), and III(C)(3). Marvel argues that the Court committed clear error and violated law of the case principals by striking paragraphs Sections I(B)(1) and III(C)(2), and I(B)(3), second sentence, and III(C)(3).

In the September 8, 2010, Order, the Court struck Marvel's Statement of the Case, Section I(B)(1), and Marvel's Additional Contested Issues of Law/Fact, Section III(C)(2):

    I(B)(1)    Is Marvel required to pay 3% of Hasbro's "net product sales" of Web Blasters or 3% of Marvel's "net product sales" of Web Blasters?

    III(C)(2)    Whether the Hasbro License Agreement licensed any rights covered by the Marvel-Kimble Agreement?

Marvel argues the Court erred in its September 8, 2010, Order as follows: Paragraph 8, subsection (a) striking the Pretrial Order, Section I(B)(1), "pursuant to the Court's ruling that 'net product sales' covers all products manufactured and sold under the Settlement Agreement whether by Hasbro or Marvel," and subsection (e), striking the Pretrial Order, Section III(C)(2), because "this action is for breach of the written Settlement Agreement entered into by the parties dated September 21, 2001." Marvel relies on this Court's Order issued on March 1, 2010, adopting the Magistrate Judge's R&R. (Motion to Reconsider at 4-5) (citing Order, filed 3/1/2010, at 8-9).

Marvel takes the explanations and discussions given by the Court in its March 1, 2010, Order out of context. The Court issued the March 1, 2010, Order in the context of the R&R, which addressed the issues raised by the parties in six dispositive motions, and the Objections to the R&R filed by the parties. Plaintiffs had filed five dispositive motions, three of which asked the Court to deny Marvel's counterclaims for overpayment of royalties to Kimble because it paid for Hasbro's net product sales rather than just its own net product

2

sales, and it paid full royalties for multi-functional toys and kits with extra-value items. Kimble's other motions asked the Court to find that Marvel continues to be responsible for "certain" obligations beyond the expiration of the Kimble patent and to define the term "net product sales" used in the Settlement Agreement. Marvel filed one dispositive motion. It asked the Court to find that its obligations to make royalty payments, pursuant to the Settlement Agreement, ends when the patent expires, May 25, 2010.

Plaintiffs objected to the R&R's finding that royalties under the Settlement Agreement did not extend beyond the patent expiration date. Defendant Marvel objected to the R&R's finding that it owed royalties under the Settlement Agreement for Hasbro's "net product sales" and the definition of "net product sales" as being 93% of gross product sales.

The Court found that the Settlement Agreement did not create separable patented and non-patented rights, and the Settlement Agreement conveyed both, patented and non-patented rights, to Marvel, and royalties for both expire when the patent ends on May 25, 2010. (Order at 6.)

The Court found, and it is undisputed, that a licensing agreement existed between Marvel and Hasbro, and pursuant to the licensing agreement Hasbro began making versions of the Web Blaster in 2007. (Order at 3.) The Court wrote:

> Whether or not the licensing agreement between Hasbro and Marvel licensed any rights covered by the Marvel-Kimble Agreement is a disputed question of fact to be resolved at trial, and as thoroughly discussed in the R&R the relationship between Hasbro and Marvel does make a difference. "Under the licensing agreement, Marvel receives 10% of Hasbro's net sales for the use of the Spider-Man license and trademark." (R&R at 13.) "Hasbro, which is making the Web Blaster, is making it as Marvel's assignee and paying Marvel for the rights to do so." (Ps' Reply to D's Objection at 3.) In other words, the 3% royalty provision in the Agreement applies, if a jury finds that Hasbro is manufacturing and selling any product under its licensing agreement with Marvel, covered by the Marvel-Kimble Agreement.

(Order at 8.)

The Court used the term "Marvel-Kimble Agreement" as being synonymous with the "Settlement Agreement," which is the subject of this litigation, to distinguish it from the Marvel-Hasbro licensing agreement, which was being discussed in this section of the Order. To the extent the Pretrial Order, Section III(C)(2) suggests that there is some other relevant agreement, the Marvel-Kimble Agreement, it is stricken.

Marvel submits the Court has recognized that "'[b]ecause Marvel would not be obligated to pay royalties for a third-party's sales of products covered by the Agreement if the company had no relationship with Marvel, the fact of the licensing relationship between Marvel and Hasbro should not change the result, 'given that the [A]greement between Hasbro does not license any of the rights covered by the Agreement.'" (Motion to Reconsider at 4.) Marvel uses this quote in its Motion to Reconsider, without identifying it as a direct quote from Marvel's Objection to the R&R, which the Court rejected in its March 1, 2010, Order. ((Order at 8) (citing Objection at 3)). Under law-of-the case principals, Marvel is obligated to pay royalties for items manufactured or sold by Hasbro to the same extent it is obligated to pay royalties for its own net product sales. In other words, Marvel is obligated to pay royalties for items manufactured or sold by Hasbro, if it would have been obligated to pay royalties if it had manufactured or sold the items.

The Court does not intend to broaden the scope of the trial beyond the pleadings, wherein both parties limited their dispute to rights and obligations existing pursuant to the terms of the Settlement Agreement, dated September 21, 2001. The Court does not intend to retry questions and issues resolved by summary judgment. The Pretrial Order, Section I(B)(1), proposed by Marvel continues to urge a royalty distinction based on whether net product sales are made by Hasbro or Marvel. The Pretrial Order, Section III(C)(2) suggests a similar distinction and is confusing to the extent it may not be using the term "Marvel-Kimble Agreement" as being synonymous with the Settlement Agreement that is the subject of this case. The strikes are in keeping with the Court's March 1, 2010, Order and the R&R.

4

What items are covered by the Settlement Agreement, dated September 21, 2001, remains a material issue of fact to be resolved at trial, including whether Marvel overpaid royalties for multi-functional toys or extra-value items.

In the September 8, 2010, Order, the Court struck Marvel's Statement of the Case, I(B)(3), second sentence, and Marvel's Additional Contested Issues of Law/Fact, III(C)(3). The second sentence reads: If the multi-function Web Blasters are covered by the Agreement, what is the proper allocation of "net product sales" in the case of the multi-function Web Blasters (e.g. Ultimate Web Blasters) that allow the user to simultaneously have five separate functions attached to his arm, only one of which shoots foam string?" Marvel is correct that the Court struck the second sentence in error. The Court meant to strike the first sentence in Section I(B)(3), which corresponds with the Court's decision to strike Section III(C)(3). The Court made a clerical error in its September 8, 2010, Order at Paragraph 8, subsection b. The Court amends subsection b to reflect striking the first sentence instead of the second sentence of Section I(B)(3) of the Pretrial Order. Consequently, striking Paragraph 8, subsection b, the first sentence, corresponds with the strike in subsection f. Marvel seeks reconsideration of subsection f, striking the Pretrial Order, Section III(C)(3), and correspondingly the Court must reconsider subsection b, as amended, striking the first sentence of the Pretrial Order, Section I(B)(3):

> I(B)(3) Are the multi-function Web Blasters (e.g. Ultimate Web Blasters) currently sold by Hasbro the same as the 'Spider-Man Web Blaster, Item 47630' that was the subject of the prior action such that they are covered by the Agreement and require payment from Marvel?
>
> III(C)(3) Whether any toy products currently sold by Hasbro are the same as the 'Spider Man Web Blaster, Item 47630' that was the subject of the prior action?

Both of these strikes reflect Marvel's undisputed admission that "it has made royalty payments based on items that were not the 'Spider-Man Web Blaster, Item 47630' that was the subject of the prior action." (Motion to Reconsider at 8.) In the context of the R&R, the Magistrate Judge wrote: "With respect to 'improved' Web Blasters, Defendant argues Plaintiffs are only entitled to a partial royalty for the Ultimate Web Blaster sold by Hasbro, which it categorizes as the first 'multi-function' Web Blaster. Plaintiffs counter that Marvel has always paid full royalties on Web Blasters with multiple functions, such as the Dual Action and Triple Action Web Blasters and the Mega Blaster Web Shooter that shot silly string, water, and darts. (Dkts. 67-14 to -17.) Defendant does not dispute that it sold toys with those functions, but claims the Ultimate Web Blaster incorporates all the functions into a single unit and does not require the user to change out canisters to use different functions. The Court cannot resolve on summary judgment whether the Ultimate Web Blaster is factually and functionally distinct from the original Web Blaster or the other products previously sold by Marvel, such that the parties' course of performance is not persuasive evidence of the parties' intent regarding royalty payments for the Ultimate Web Blaster." (R&R at 16.)

Marvel argues that the Court's strikes are contrary to the finding in the R&R that "there are genuine issues of fact regarding whether any toys sold by Hasbro are properly categorized as the 'Web Blaster product that was the subject of the Action and to which the Judgment refers' . . . Thus, determining what toys the parties intended to be covered by the Agreement will require examining the course of performance and the specific toys for which royalties are in dispute. . . .'" (Motion to Reconsider at 8) (quoting R&R at 14-15). In between these two sentences, the Magistrate Judge wrote: "Although the toy that was litigated during the 1997 Action was one specific version of the Web Blaster, Marvel has made royalty payments to Plaintiffs for many later-developed versions of the Web Blaster. Thus, determining what toys the parties intended to be covered by the Agreement will require

examining the course of performance and the specific toys for which royalties are in dispute. In particular, as discussed below, the parties dispute whether Hasbro's Ultimate Web Blaster is *entirely* within the terms of the Agreement." (R&R at 14) (emphasis added here).

In Marvel's Answer, the factual allegations are: "Marvel contends that the '3% of net product sales' paid pursuant to the Agreement should be calculated based on only the value of the basic Web Blaster and the value of enhanced features on a Web Blaster or other items packaged with a Web Blaster should not be included in the base on which Marvel pays '3% of 'net product sales.'" (Answer ¶ 40.) In its Fourth Counterclaim, Marvel alleges that in 2007, it paid royalties based on the total price of products consisting of improved Web Blasters which perform various additional functions, and it believed royalties should only be required for these improved Web Blaster products based on the percentage of the total price for the product attributable to the function of the basic Web Blaster. (Answer at 8-9.)

Until the Pretrial Order, Marvel had not stated its Fourth Counterclaim as disputing whether the multi-function Web Blasters (e.g. Ultimate Web Blasters) currently sold by Hasbro are the same as the Spider-Man Web Blaster, Item 47630 that was the subject of the prior action to establish whether they are covered by the Agreement. The Court affirms its strikes of the Pretrial Order, Section I(B)(3), first sentence, and Section III(C)(3) because these paragraphs mis-state the relevant material question of fact in respect to Marvel's Fourth Counterclaim. A material fact is any factual dispute that might effect the outcome of the case under the governing substantive law. *Cf., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (standard for summary judgment). Marvels' Fourth Counterclaim does not depend on whether or not the multi-function Web Blasters (e.g. Ultimate Web Blasters) currently sold by Hasbro are the same as the Spider-Man Web Blaster, Item 47630 that was the subject of the prior action. The material question of fact for trial is: what items are covered by the Settlement Agreement, including whether the Ultimate Web Blaster is factually and

7

functionally distinct from the original Web Blaster *or the other products previously sold by Marvel.* Without this latter factual finding the first finding is meaningless.

The Court reconsiders the strike it made to Marvel's Statement of the Case, Section I(B), paragraph 3, the second sentence. It was a clerical error to strike the second sentence. The Court will amend Paragraph 8, subsection b, of the September 8, 2010, Order to strike Marvel's Statement of the Case, Section I(B), paragraph 3, the first sentence. In all other respects, the September 8 Order is affirmed. The strikes were made by the Court to clarify the scope of the trial the parties and not in anyway to preclude Marvel from presenting its Fourth counterclaim. The Court affirms that there remains for trial a question of fact as to what items are covered by the Settlement Agreement, dated September 21, 2001.

**Accordingly,**

**IT IS ORDERED** that the Motion to Reconsider (doc. 111) is granted as to correcting the clerical error made by the Court and denied in all other parts.

**IT IS FURTHER ORDERED** that the Court shall issue an Amended Order to correct the clerical error made in its September 8, 2010, Order.

DATED this 22nd day of September, 2010.

David C. Bury
United States District Judge